POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Jerald Hayes and Millibani
Binoua*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS BRAY, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ROCKET LAB USA, INC., PETER BECK, and ADAM SPICE, <br><br> Defendants. | Case No. 2:25-cv-01733-GW-KES <br><br> MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN SUPPORT OF MOTION OF JERALD HAYES AND MILLIBANI BINOUA FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS <br><br> DATE:  May 29, 2025 <br> TIME:  8:30 a.m. <br> JUDGE:  George H. Wu <br> CTRM:  9D (1st Street Courthouse) |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:25-CV-01733-GW-KES

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ........................................................................1

II.   ARGUMENT...............................................................................................6

    A.    HAYES AND BINOUA SHOULD BE APPOINTED CO-LEAD PLAINTIFFS .......................................................................6

        1.    Hayes and Binoua Have the "Largest Financial Interest"........................7

        2.    Hayes and Binoua Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure ...................................8

        3.    Hayes and Binoua are an Appropriate Movant Duo ...............................8

        4.    Hayes and Binoua Can Represent the Interests of Both Common Stock and Options Investors .......................................................10

III.  CROSKREY IS DISQUALIFIED FROM SERVING AS LEAD PLAINTIFF....12

    A.    CROSKREY HAS OVERSTATED HIS INVESTMENT LOSSES...........12

    B.    CROSKREY IS A NET SELLER AND NET GAINER.............................16

IV.  CONCLUSION.........................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadilla v. Precigen, Inc.*,
No. 20-cv-06936-BLF, 2021 WL 1312746 (N.D. Cal. Apr. 08, 2021)......................13

*Barnet v. Elan Corp., PLC*,
236 F.R.D. 158 (S.D.N.Y. 2005) .............................................................................9

*Blitz v. AgFeed Indus.*,
2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012) .....................................................15

*Bruce v. Suntech Power Holdings Co.*,
No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012) ..................4, 10

*Cook v. Allergan PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)........................................................15

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)..........................................................................................14, 15

*Foster v. Maxwell Techs., Inc.*,
2013 WL 5780424 (S.D. Cal. Oct. 24, 2013) .........................................................14

*Harari v. PriceSmart, Inc.*,
19-CV-958 JLS (LL), 2019 WL 4934277 (S.D. Cal. Oct. 7, 2019).........................3, 8

In *China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)..............................................................................................3

*In re AudioEye, Inc. Sec. Litig.*,
2015 WL 13654027 (D. Ariz. Aug. 3, 2015) ..........................................................14

*In re Bally Total Fitness Sec. Litig.*,
No. 04C3530, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005).....................................17

*In re Bausch & Lomb Inc. Sec. Litig.*,
244 F.R.D. 169 (W.D.N.Y.2007) ........................................................................5, 16

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017)...........9

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...............................................................6, 8, 13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d. Cir. 2001) ...........................................................................9

*In re Countrywide Fin. Corp. Sec. Litig.*,
273 F.R.D. 586 (C.D. Cal. 2009).....................................................................11

*In re Lyft Sec. Litig.*,
2020 WL 1043628 (N.D. Cal. Mar. 4, 2020) ...............................................14

*In re MGM Mirage Sec. Litig.*,
No. 2:09-CV-01558-GMN, 2010 WL 4316754 (D. Nev. Oct. 25, 2010)...................10

*In re Sipex Corp. Securities Litigation*,
No. C 05-00392 WHA (N.D. Cal. May 24, 2005) .......................................13

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) .....................................................................11

*In re Watchguard Sec. Litig.*,
No. C05-678JLR, 2005 WL 8188936 (W.D. Wash. July 13, 2005) ..........................15

*Karinski v. Stamps.com, Inc.*,
CV 19-1828-R, 2019 WL 8013753 (C.D. Cal. June 5, 2019)...................................3, 8

*Karp v. Diebold Nixdorf, Inc.*,
No. 19-CV-6180 (LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ....................12

*Knox v. Yingli Green Energy Holding Co.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................2, 7

*Miller v. Ventro Corp.*,
No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001)............................10

*Nicolow v. Hewlett Packard Co.*,
Nos. 12-05980 CRB *et al.*, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ......................2

*Perlmutter v. Intuitive Surgical, Inc.*,
No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ...........6, 16, 17

*Perrin v. Sw. Water Co.*,
    No. 208CV7844FMCAGRX, 2009 WL 10654690 (C.D. Cal. Feb. 13, 2009)...3, 9, 10

*Robb v. Fitbit Inc.*,
    No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016).................4, 9, 10

*Scheller v. Nutanix, Inc.*,
    No. 19-cv-01651-WHO, 2021 WL 2410832 (N.D. Cal. June 10, 2021) ......5, 6, 16, 17

*Vataj v. Johnson*,
    19-CV-06996-HSG, 2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ...........................3, 8

*Weisz v. Calpine Corp.*,
    No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002).....................5, 16

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ................................................................................9

**Statutes**

15 U.S.C. § 78u-4..............................................................................................1, 6, 7

Private Securities Litigation Reform Act of 1995 .....................................................*passim*

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................*passim*

Movants Hayes and Binoua[1] respectfully submit this Memorandum of Law in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of Pomerantz and Bronstein as Co-Lead Counsel (Dkt. No. 37); and in opposition to the competing motions of Willie Croskrey ("Croskrey") (Dkt. No. 16) and Chase Renick ("Renick") (Dkt. No. 33).[2]

## I.    PRELIMINARY STATEMENT

The Action is a putative securities class action lawsuit on behalf of investors in Rocket Lab securities.  As with all federal class action securities lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; *and* who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).

Here, the only movants to satisfy the PSLRA's appointment criteria are Hayes and Binoua.  First, Hayes and Binoua possess the largest financial interest among the eligible candidates for appointment as Lead Plaintiff because they incurred a loss of

---

[1] All capitalized terms herein are defined in Hayes and Binoua's moving brief, unless otherwise indicated.  *See* Dkt. No. 38.

[2] Initially three other movants also filed a competing motion seeking appointment as lead plaintiff: (i) Mohamed Hassan ("Hassan") (Dkt. No. 20); (ii) Joseph L. Coates ("Coates") (Dkt. No. 29); and (iii) Richard Slepko ("Slepko") (Dkt. No. 24).  On April 30, 2025, Hassan filed a notice withdrawing his motion. Dkt. No. 41.  On May 8, 2025, Coates filed a notice withdrawing his motion (Dkt. No. 42) and Slepko filed a notice stating his non-opposition to competing motions (Dkt No. 43).

approximately $274,035 in connection with their Class Period purchases of Rocket Lab securities, more than any eligible competing movant.

The table below sets forth Hayes and Binoua's losses compared to those of the competing movants:

| Movant | Loss |
|---|---|
| Hayes and Binoua | $274,035 |
| Renick | $57,481 |
| ~~Croskrey~~ | ~~$846,651~~ |

Having incurred a loss of $274,035, Hayes and Binoua have the greatest financial interest within the meaning of the PSLRA of any putative Class member eligible for appointment as Lead Plaintiff. *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (emphasizing monetary loss in assessing financial interest); *Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same).

One competing movant, Croskrey, claims to have incurred a larger loss than Hayes and Binoua. However, as discussed below, Croskrey is subject to unique defenses and fails to satisfy the adequacy and typicality requirements of Rule 23 and is therefore disqualified from consideration as Lead Plaintiff.

In addition to their significant financial interest, Hayes and Binoua also satisfy the adequacy and typicality requirements of Rule 23. Hayes and Binoua are aware of no conflict between their interests and those of the Class, their losses incurred as a result of the Defendants' alleged malfeasance gives them a sufficient stake in the outcome of the

Action to ensure vigorous advocacy, and in Pomerantz and Bronstein, Hayes and Binoua have retained qualified and experienced counsel. *Karinski v. Stamps.com, Inc.*, CV 19-1828-R, 2019 WL 8013753, at *1 (C.D. Cal. June 5, 2019); *Harari v. PriceSmart, Inc.*, 19-CV-958 JLS (LL), 2019 WL 4934277, at *3 (S.D. Cal. Oct. 7, 2019). Moreover, Hayes and Binoua's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members. *See*, *e.g.*, *Vataj v. Johnson*, 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020).

In addition, Hayes and Binoua are a small and cohesive duo who have further demonstrated their adequacy by the submission of a Joint Declaration contemporaneously with their motion, attesting to, *inter alia*, their shared understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA and their preparedness to coordinate their efforts to prosecute this action diligently on behalf of the Class. *See* Dkt. No. 39-4. In *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018), the Supreme Court recently affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups". Courts in this Judicial District and in the Ninth Circuit routinely appoint similarly constituted groups to serve as Lead Plaintiffs in PSLRA actions. *See*, *e.g.*, *Perrin v. Sw. Water Co.*, No. 208CV7844FMCAGRX, 2009 WL 10654690, at *3-4 (C.D. Cal. Feb. 13, 2009) (appointing as lead plaintiff a group of four investors that "submitted a Joint Declaration

agreeing to 'work together to ensure the maximum recovery on behalf of the proposed class'"); *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *4, *7 (N.D. Cal. May 10, 2016) (appointing as lead plaintiff a group of five unrelated investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus"); *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (appointing as lead plaintiff a group of three unrelated investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class").

By contrast, Croskrey, the only movant who claims a larger financial interest in this litigation than Hayes and Binoua, is inadequate, atypical, and subject to unique defenses, and thus ineligible for appointment as Lead Plaintiff. First, Croskrey has significantly overstated his investment losses. Although Croskrey claims to have "suffered financial harm of approximately $846,651.43" in connection with his purchases of Rocket Lab securities during the Class Period, calculated using a "retained shares method," (*see* Dkt. No. 17 at 5), this methodology improperly excludes substantial proceeds that Croskrey received when he sold shares of Rocket Lab stock at artificially inflated prices during the Class Period. Properly taken into account, the proceeds Croskrey received from the

foregoing sales offset Croskrey's claimed investment losses by approximately **$369,000**, or **43.6%**, reducing his loss in this litigation to only $477,651.63.

Second, during the Class Period, Croskrey was both a net seller and net gainer with respect to his transactions in Rocket Lab stock—that is, he sold more shares than he purchased and received more funds in sale proceeds than he spent purchasing those shares.  Courts routinely disqualify investors that are net sellers and net gainers from consideration as lead plaintiffs under the PSLRA, finding them atypical, inadequate, and subject to unique defenses, because, having sold more shares at artificially inflated prices than they purchased and profited from the purchase and sale of Defendants' stock during the class period, net sellers and net gainers have actually **benefited** from Defendants' alleged fraud, rather than being harmed by it.  *See, e.g.*, *Scheller v. Nutanix, Inc.*, No. 19-cv-01651-WHO, 2021 WL 2410832, at *6-7 (N.D. Cal. June 10, 2021) (disqualifying "net gainer" from serving as lead plaintiff); *Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) (disqualifying movant that "sold almost twice th[e] amount [of shares it purchased] . . . during the Class Period"); *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173–74 (W.D.N.Y.2007) (citing numerous cases that rejected applications for lead plaintiff status made by "net sellers" and "net gainers").  Here, the certification Croskrey submitted with his motion papers (the "Croskrey Certification") lists total purchases of 376,900 Rocket Lab shares and total sales of **394,110** Rocket Lab shares during the Class Period.  *See* Dkt. No. 18-2 at *3-4.

In connection with the foregoing sales, Croskrey received $10,994,790 in proceeds during the Class Period, over **$575,000** more than the $10,419,462 he spent on his Class Period purchases of Rocket Lab shares.  Accordingly, Croskrey is a "net seller" and "net gainer" who **benefited** from Defendants' alleged fraud, thus rendering him subject to unique defenses and atypical and inadequate under Rule 23 with respect to a class of investors who were damaged by the Defendants' alleged fraud.  *See, e.g.*, *Nutanix*, 2021 WL 2410832, at *6-7 (disqualifying "net gainer" from serving as lead plaintiff); *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011) ("When [movant] sold [stock] during the Class Period . . . he sold it at fraudulently inflated prices. As a result . . . [movant] actually benefitted from the fraud.").

For the foregoing reasons, Hayes and Binoua respectfully request that the Court grant their motion in its entirety and deny the competing motions.

## II.    ARGUMENT

### A.    HAYES AND BINOUA SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" **and** "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). At this stage, the movant that has the largest financial interest need only make a *prima facie* showing that it satisfies the adequacy and typicality requirements of Rule 23.  *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002).  Once this presumption is triggered, it

may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II).  Here, the most adequate class representatives for the Class are Hayes and Binoua.

### 1.  Hayes and Binoua Have the "Largest Financial Interest"

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this Judicial District recognize that the amount of financial loss is the most significant factor to be considered.  *See, e.g., Knox*, 136 F. Supp. 3d at 1163 (emphasizing loss in assessing financial interest).  Under the foregoing analysis, no eligible movant seeking appointment as lead plaintiff in this action has a larger financial interest in the litigation than Hayes and Binoua.  As the chart at p. 2 illustrates, Hayes and Binoua incurred a loss of $274,035 in connection with their Class Period purchases of Rocket Lab securities, over $216,000 larger than the loss incurred by Renick, the only other eligible competing movant.

As discussed in detail *infra* at Section III, Croskrey, the only other movant who claims to have incurred a larger loss on his Class Period purchases of Rocket Lab securities than Hayes and Binoua, is inadequate and atypical within the meaning of Rule 23, and as such is disqualified from appointment as Lead Plaintiff.

**2.      Hayes and Binoua Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

In addition to possessing the largest financial interest in the relief sought by the Class, Hayes and Binoua have also made the requisite *prima facie* showing that they satisfy the typicality and adequacy requirements of Rule 23. *See Cavanaugh*, 306 F.3d at 730-31. First, Hayes and Binoua's claims satisfy the typicality requirement of Rule 23(a)(3) because they are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See, e.g.*, *Vataj*, 2020 WL 532981, at *3. Hayes and Binoua, like all members of Class, purchased Rocket Lab securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the requirements of Rule 23. *Vataj*, 2020 WL 532981, at *3. Second, Hayes and Binoua satisfy the adequacy requirement of Rule 23(a)(4) because they have a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class. *See, e.g.*, *Karinski*, 2019 WL 8013753, at *1; *Harari*, 2019 WL 4934277, at *3.

**3.      Hayes and Binoua are an Appropriate Movant Duo**

In addition, Hayes and Binoua constitute an appropriate duo of the type routinely appointed to serve as Co-Lead Plaintiffs, and, as such the Court should consider their combined financial interest in this litigation in determining the most adequate plaintiff for

the Class. *See, e.g.*, *Perrin*, 2009 WL 10654690, at *3 ("[C]ourts have generally held that small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation."); *Fitbit*, 2016 WL 2654351, at *7 (appointing five-person investor group as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) (noting "[t]he PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff" (citation omitted)); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff).

Here, Hayes and Binoua are a small and cohesive duo who incurred significant losses in connection with their purchases of Rocket Lab securities. *See* Dkt. No. 39-1. Contemporaneously with their motion, Hayes and Binoua submitted a Joint Declaration attesting to, *inter alia*, their backgrounds and investment experience; their understanding of the posture of this litigation; their understanding of the significance of their motion; their understanding of the responsibilities of a lead plaintiff appointed pursuant to the

PSLRA; and their readiness to jointly undertake those responsibilities on behalf of the Class.  *See generally* Dkt. No. 39-4.  Courts routinely appoint Co-Lead Plaintiffs under such circumstances.  *See, e.g.*, *Perrin*, 2009 WL 10654690, at *3-4 (appointing as lead plaintiff a group of four investors that "submitted a Joint Declaration agreeing to 'work together to ensure the maximum recovery on behalf of the proposed class'"); *Fitbit*, 2016 WL 2654351, at *4, *7 (appointing as lead plaintiff a group of five unrelated investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus"); *Suntech*, 2012 WL 5927985, at *3 (appointing as lead plaintiff a group of three unrelated investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class").

### 4.   Hayes and Binoua Can Represent the Interests of Both Common Stock and Options Investors

Finally, Hayes and Binoua respectfully submit that the Court's appointment of Class leadership that includes both common stock and options investors is warranted to ensure that the interests of both are protected.  *See, e.g.*, *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *11 (N.D. Cal. Nov. 28, 2001) (acknowledging "potential differences between . . . bondholders and stockholders" and "find[ing] it[] appropriate to appoint a bondholder as co-lead plaintiff in addition to a stockholder"); *In re MGM Mirage Sec. Litig.*, No. 2:09-CV-01558-GMN, 2010 WL 4316754, at *5 (D. Nev. Oct. 25, 2010)

(appointing investor in debt securities as co-lead plaintiff alongside common stock investor to "ensure the protection of the interests of the class members that purchased debt securities"); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 624-25 (C.D. Cal. 2009) (appointing multiple class representatives to represent the interests of investors in different types of securities to address issues particular to each); *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 147-48 (S.D.N.Y. 2019) (appointing multiple class representatives to represent the interests of investors alleging different federal securities law claims).

Here, the Complaint in the Action defines the Class as "all investors who purchased or otherwise acquired Rocket Lab *securities*" during the Class Period. Dkt. No. 1 ¶ 1 (emphasis added). Accordingly, the Class definition encompasses investors in *all* Rocket Lab securities during the Class Period, including stock *and* options investors. Unlike Class members who directly purchased Rocket Lab stock on the open market, options investors instead purchased contracts conveying the right to purchase or sell certain amounts of Rocket Lab stock at a specified strike price within a pre-determined time. The claims of options investors thus necessarily implicate various issues that are distinct from those of investors who only purchased Rocket Lab common stock, and their interests thus merit representation by similarly situated investors—namely, Hayes and Binoua. Hayes and Binoua, unlike the competing movants, transacted in Rocket Lab options during the Class Period in addition to Rocket Lab common stock, and incurred losses on both their

common stock *and* options transactions.  *See* Dkt. No. 39-1.  Accordingly, Hayes and Binoua are uniquely qualified to represent the interests of options investors in this Action and should therefore be appointed as Co-Lead Plaintiffs.

## III.   CROSKREY IS DISQUALIFIED FROM SERVING AS LEAD PLAINTIFF

Although Croskrey claims to have incurred a larger loss than Hayes and Binoua in connection with the Defendants' alleged malfeasance, he is inadequate, atypical, and subject to unique defenses, which mandates denial of his motion irrespective of his financial interest in this litigation.

### A.   CROSKREY HAS OVERSTATED HIS INVESTMENT LOSSES

First, in his motion papers, Croskrey significantly overstated his investment losses in this litigation.  Courts routinely disqualify investors that have overstated losses as inadequate to serve as lead plaintiff.  *See*, *e.g.*, *Karp v. Diebold Nixdorf, Inc.*, No. 19-CV-6180 (LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (finding movant inadequate where "exaggerated loss totals originally submitted by the [movant]" represented "an error of some 34%").  Croskrey claims to have "suffered financial harm of approximately $846,651.43" in connection with his purchases of Rocket Lab securities during the Class Period.  *See* Dkt. No. 17 at 5.  To calculate his financial interest, Croskrey states that he has used a "retained shares method," pursuant to which Croskrey presents the Court only with the losses that he incurred on the 52,290 shares of Rocket Lab stock that he held on February 25, 2025—*i.e.*, when Bleecker Street Research published a report

alleging that Rocket Lab had materially misled investors about the likelihood that its Neutron rocket will launch in mid-2025, following which Rocket Lab's stock price fell sharply—and wholly disregards the financial impact of his Class Period trading in Rocket Lab securities.

Croskrey's methodology fails as a matter of both logic and law. First, Croskrey's methodology willfully ignores the substantial proceeds that he received when he sold shares of Rocket Lab stock at artificially inflated prices during the Class Period. Specifically, during the Class Period, Croskrey sold 394,110 Rocket Lab shares at prices ranging from $20.500 to $31.044 per share. *See* Dkt. No. 18-2 at *3-4. When properly taken into account, the proceeds that Croskrey received from these sales offset his claimed investment losses by approximately ***$369,000***, or ***43.6%***, reducing his total losses to approximately $477,651.63. While the PSLRA itself does not provide any guidance concerning the method of calculating financial interest, courts must employ "'accounting methods that are [. . .] rationally [] applied.'" *Abadilla v. Precigen, Inc.*, No. 20-cv-06936-BLF, 2021 WL 1312746, at *2 (N.D. Cal. Apr. 08, 2021) (quoting *Cavanaugh*, 306 F.3d at 730). Here, there is nothing "rational" about excluding Croskrey's significant sales proceeds from his financial interest in this litigation. Indeed, his proposed methodology would yield him a significant damages windfall, by allowing him to claim as damages $369,000 that he actually received in ***proceeds*** from his Class Period stock sales. *See*, *e.g.*, Order Appointing Lead Plaintiffs, ECF 30 at 6, *In re Sipex Corp. Securities Litigation*,

No. C 05-00392 WHA (N.D. Cal. May 24, 2005) ("When the same investor . . . buys and sells shares during the class period, *the gains received must be used to reduce the losses incurred. Otherwise, the investor would reap a windfall*.") (emphasis added).  Croskrey may not simply disregard the financial reality of his Class Period trading activity in calculating his investment losses.

Moreover, while Croskrey carefully avoids characterizing it in such terms, his "retained shares" methodology, which he describes as "look[ing] to the shares purchased during the class period and retained at the end of the class period and calculate[ing] the total net loss considering only those securities," (Dkt. No. 17 at 5) (internal citations and quotations omitted), plainly derives from loss causation principles articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), in which the Supreme Court held that loss causation could only be alleged for shares held at the time of a corrective disclosure.  Indeed, each of the cases that Croskrey cites in ostensible support of his position either expressly adopted *Dura* or referenced the principles articulated therein.[3]

Yet *Dura* articulated a pleading standard, not an accounting methodology, and courts generally decline to assess financial interest with reference to the principles

---

[3] *See, e.g.*, *Foster v. Maxwell Techs., Inc.*, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("**Consistent with Dura**, this Court has adopted the retained share methodology.") (emphasis added); *In re Lyft Sec. Litig.*, 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020) (stating that the retained shares method looks to losses experienced due to the shares that the plaintiff was holding at the time the fraud was disclosed—*i.e.*, the principle articulated in *Dura*); *In re AudioEye, Inc. Sec. Litig.*, 2015 WL 13654027, at *5 (D. Ariz. Aug. 3, 2015) (discussing *Dura*).

articulated in *Dura* at this stage of the litigation. *See, e.g.*, *Cook v. Allergan PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (finding it "unwise to embrace [*Dura*] methodology" at lead plaintiff appointment stage); *Blitz v. AgFeed Indus.*, 2012 WL 1192814, at *4 (M.D. Tenn. Apr. 10, 2012) (noting that "*Dura* [. . .] was not a case involving the appointment of a Lead Plaintiff under the PSLRA"). In *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 WL 8188936, at *4 (W.D. Wash. July 13, 2005), the court expressly declined to look to *Dura* in assessing the financial interest of a Lead Plaintiff movant, explaining its reasoning as follows:

> [The movant's] citation to the discussion of securities class action damages in *Dura* . . . is inapposite. The *Dura* court held that a plaintiff needed to do more than allege the purchase of stock at a fraud-inflated price in order to plead loss causation. The Supreme Court recognized, as does this court, that numerous factors may affect the price of a security. The Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue.

*Id.* at *4 n.6.

Accordingly, the Court should not adopt Croskrey's speculative, *Dura*-derived methodology at this early stage of the litigation—particularly considering that in this instance, the proposed methodology massively distorts Croskrey's losses by excluding hundreds of thousands of dollars in the proceeds that he received from his Class Period sales of Rocket Lab stock.

## B.    CROSKREY IS A NET SELLER AND NET GAINER

Second, Croskrey is inadequate and/or atypical because he is a net seller and net gainer with respect to Rocket Lab stock during the Class Period, as he sold more shares than he purchased and received more funds in proceeds from those sales than he spent on his purchases.  Courts routinely disqualify investors that are net sellers and net gainers from consideration as lead plaintiffs under the PSLRA, finding them atypical, inadequate, and subject to unique defenses.  Because a net seller sold more shares at prices artificially inflated by fraud than they purchased and made more money on those sales than they spent on their purchases, net sellers and net gainers have actually ***benefited*** from Defendants' alleged fraud.  *See, e.g.*, *Nutanix*, 2021 WL 2410832, at *6-7 (disqualifying "net gainer" from serving as lead plaintiff); *Calpine*, 2002 WL 32818827, at *7 (disqualifying movant that "sold almost twice th[e] amount [of shares it purchased] . . . during the Class Period"); *Perlmutter*, 2011 WL 566814, at *9 ("When [movant] sold [stock] during the Class Period . . . he sold it at fraudulently inflated prices. As a result . . . [movant] actually benefitted from the fraud."); *In re Bausch*, 244 F.R.D. 169 at 173–74 (citing numerous cases that rejected applications for lead plaintiff status made by "net sellers" and "net gainers").

Here, the Schedule A appended to the Croskrey Certification lists total purchases of 376,900 Rocket Lab shares and total sales of 394,110 Rocket Lab shares during the Class Period.  *See* Dkt. No. 18-2 at *3-4.  Croskrey thus sold 17,210 more Rocket Lab shares during the Class Period than he purchased at prices alleged to have been artificially

inflated by Defendants' alleged fraud. *See id.* Moreover, in connection with the foregoing sales, Croskrey received $10,994,790 in proceeds during the Class Period, over $575,000 more than the $10,419,462 he spent on his Class Period purchases of Rocket Lab shares. Accordingly, because Croskrey actually ***benefited*** from Defendants' alleged fraud, he is subject to unique defenses and atypical and inadequate under Rule 23 with respect to a class of investors who were damaged by the Defendants' alleged fraud. *See Nutanix*, 2021 WL 2410832, at *7 ("[Movant] cannot adequately represent the Class because he is a net seller and a net gainer during the Class Period and, therefore, subject to unique defenses."); *Perlmutter*, 2011 WL 566814, at *9 ("[Movant's] status as a net seller and a net gainer during the Class Period weighs against [movant's] appointment as the lead plaintiff. Besides demonstrating that he potentially benefitted from Defendants' fraud, [movant's] status as a net seller and a net gainer also weighs against him because it may subject him to unique defenses if he were to be the class representative."). If appointed as Lead Plaintiff, at virtually every point of the litigation, Defendants are nearly certain to attack Croskrey for status as a net gainer, creating a serious distraction from the prosecution of the Class's claims. There is simply no reason to saddle the Class with a representative subject to such debilitating issues. *See In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed.").

## IV.   CONCLUSION

For the foregoing reasons, Hayes and Binoua respectfully request that the Court issue an Order: (1) appointing Hayes and Binoua as Co-Lead Plaintiffs for the Class; and (2) approving Pomerantz and Bronstein as Co-Lead Counsel for the Class.

Dated:  May 8, 2025

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Jerald Hayes and Millibani Binoua and Proposed Co-Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Jerald Hayes and Millibani Binoua and Proposed Co-Lead Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti