Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Movant Willie Croskrey*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUGLAS BRAY, Individually and On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>       v.<br><br>ROCKET LAB USA, INC., PETER BECK, and ADAM SPICE,<br><br>       Defendants. | Case No. 2:25-cv-01733-GW-KES<br><br>**WILLIE CROSKREY'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL** |

Lead Plaintiff Movant Willie Croskrey ("Croskrey") submits this memorandum of law in opposition to the five competing motions for appointment as lead plaintiff and approval of lead counsel filed by other purported class members (Dkt. Nos. 20, 24, 29, 33, 37). Croskrey should be appointed as lead plaintiff and his selection of counsel should be approved because he has the largest financial interest and both he and his choice of counsel are adequate to represent the class.

## I.   INTRODUCTION

Six movants filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): Croskrey (Dkt. No. 16); Richard Michael Slepko ("Slepko") (Dkt. No. 24); Jerald Hayes and Millibani Binoua (the "Hayes/Binoua Group") (Dkt. No. 37); Joseph L. Coates ("Coates") (Dkt. No. 29); Chase Renick ("Renick") (Dkt. No. 33); and Mohamed Hassan ("Hassan") (Dkt. No. 20). However, Slepko, Coates, and Hassan have since abandoned their motions by withdrawing their motions or filing notices that they do not oppose the competing motions. *See* Dkt. Nos. 41, 42, 43. As such, only Croskrey, the Hayes/Binoua Group, and Renick are still seeking appointment as lead plaintiff.

The PSLRA directs the Court to appoint as lead plaintiff the movant that is the "most adequate plaintiff"—*i.e.*, the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA further provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant that, *inter alia*, has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As demonstrated in Croskrey's memorandum of law in support of his lead plaintiff motion (Dkt. No. 17), Croskrey has the largest financial interest in the relief

sought by the class. Croskrey's financial interest, as measured by his net loss on retained shares, is $846,651. *See* Dkt. No. 18-3. As such, Croskrey is the presumptively "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Since Croskrey is the presumptively most adequate plaintiff, and the presumption has not been rebutted, Croskrey should be appointed as lead plaintiff, and his selection of lead counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

## II.  CROSKREY IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF BECAUSE CROSKREY HAS THE LARGEST FINANCIAL INTEREST

Croskrey satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). First, Croskrey filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 16; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Second, Croskrey satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, as demonstrated in his memorandum of law in support of his lead plaintiff motion. *See* Dkt. No. 17; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Finally, as explained *infra*, Croskrey has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Since the PSLRA does not mandate any particular method for determining which movant has the largest financial interest, district courts are free to choose any method that is "both rational and consistently applied." *See In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002). Courts in this Circuit generally consider the four *Olsten-Lax* factors to determine financial interest, which include: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015).

However, approximate losses is the "most determinative" factor. *Id.* In fact, to identify the movant with the largest financial interest, "[m]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses." *In re Cheetah Mobile, Inc. Sec. Litig.*, 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021) (quoting *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005)); *see also Dixon v. The Honest Co., Inc.*, 2022 WL 20611227, at *3 (C.D. Cal. Jan. 26, 2022) (identifying the movant with the largest financial interest based on loss alone); *Mullen v. Wells Fargo & Co.*, 2021 WL 965344, at *3 (N.D. Cal. Mar. 15, 2021) ("Consistent with the plain language of [the PSLRA], the fourth, approximate loss, calculation matters most."). Moreover, when the factors conflict regarding which movant has the largest financial interest, courts in this District find loss to be determinative. *See Cheetah Mobile*, 2021 WL 99635, at *3 (appointing the movant with the largest loss, despite having a smaller interest as measured by the other factors); *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021) (same; reasoning, "[i]n this [C]ircuit, no case law requires the Court to give equal weight to the first three *Olsten-Lax* factors").

To calculate losses, courts in this Circuit often rely on the "retained shares method." *See Foster v. Maxwell Techs., Inc.*, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("[T]his Court has adopted the retained share methodology."); *In re Lyft Sec. Litig.*, 2020 WL 1043628, at *4 (N.D. Cal. Mar. 4, 2020) (adopting the retained shares method). The retained shares method "looks to the shares purchased during the class period and retained at the end of the class period and calculates the total net loss considering only those securities." *Id.*; *see also In re AudioEye, Inc. Sec. Litig.*, 2015 WL 13654027, at *5 (D. Ariz. Aug. 3, 2015) ("This Court will follow the Ninth Circuit cases that have held that, when calculating lead plaintiff movant's losses . . . any loss or gain on pre-disclosure sales will be disregarded."). By considering only the shares purchased during the class period and held at the time of the corrective disclosure, the retained shares method is designed to calculate losses only on those

shares actually damaged by the fraud. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[I]f . . . the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). For this reason, the retained shares method "will most accurately calculate net loss where," as here, there is one alleged corrective disclosure, rather than "multiple partial disclosures." *See Lyft*, 2020 WL 1043628, at *4; Dkt. No. 1 ¶ 21-25 (alleging one corrective disclosure, publication of the Bleecker Street Research report, on February 25, 2025 at approximately 10:00 a.m.).

Here, Croskrey has, by far, the largest loss as calculated by the retained shares method:

| Movant | Loss (Retained Shares Method) |
|---|---|
| Croskrey | $846,651 |
| ~~Slepko~~ | ~~$260,884~~ |
| *Hayes* | *$110,312* |
| *Binoua* | *$35,441* |
| Hayes/Binoua Total | $145,753 |
| ~~Coates~~ | ~~$127,263~~ |
| Renick | $57,797 |
| ~~Hassan~~ | ~~$48,304~~ |

Since Croskrey has by far the largest loss, he has the largest financial interest.

In addition to the retained shares method, some courts in the Ninth Circuit rely on the last in, first out ("LIFO") method to calculate losses. *See Waterford Twp. Police v. Mattel, Inc.*, No. 17-cv-04732, 2017 WL 10667732, at *5 (C.D. Cal. Sept. 29, 2017) (employing the LIFO method); *see also Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, 2023 WL 3613313, at *3 (N.D. Cal. May 22, 2023) (to calculate loss, courts in this District "often rely on one of two methods": the "LIFO" method or the "retained shares method"); *Lyft*, 2020 WL 1043628, at *3-*4 (similar, recognizing that "[c]ourts in this district primarily have relied on two methods"). Unlike the retained shares method, the LIFO method considers all gains and losses on

shares purchased during the class period, whether or not those shares were held over a corrective disclosure.

Here, Croskrey also has the largest loss as calculated by the LIFO method:

| Movant | Loss (LIFO Method) |
|---|---|
| Croskrey | $368,897 |
| ~~Slepko~~ | ~~$260,884~~ |
| *Hayes* | *$244,191* |
| *Binoua* | *$30,315* |
| Hayes/Binoua Total | $274,506 |
| ~~Coates~~ | ~~$127,263~~ |
| Renick | $57,797 |
| ~~Hassan~~ | ~~$28,079~~ |

As such, Croskrey has the largest loss as calculated by both of the well-accepted methods in this District and Circuit. Croskrey therefore has the largest financial interest.[1]

Since Croskrey also satisfies the requirements of Rule 23, and filed a timely motion, Croskrey is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## III.   THE PRESUMPTION THAT CROSKREY IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No proof has been presented that Croskrey would be inadequate or subject to unique

---

[1] Croskrey also purchased more shares than the remaining movants (both gross and net) during the class period. Croskrey purchased 376,900 shares gross and 23,590 shares net. The Hayes/Binoua Group purchased only 221,339 shares gross and 4,006 shares net. Renick purchased 6,291 shares, both gross and net.

defenses. Croskrey is not aware of any basis for such a contention. As such, Croskrey should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status.").

## IV.    CROSKREY'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). *See also Cavanaugh*, 306 F.3d at 732 n.11 ("Congress gave the lead plaintiff . . . the power to select a lawyer for the class."). Here, Croskrey has selected Glancy Prongay & Murray LLP to be lead counsel. Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to efficiently and effectively conduct this litigation. *See* Dkt. No. 18-4 (Glancy Prongay & Murray LLP firm résumé). The firm has decades of experience successfully representing injured investors. *See id.* By approving Croskrey's selection of counsel, the Court will ensure that the class will receive the highest caliber of legal representation. Accordingly, Croskrey's selection of lead counsel for the class should be approved.

## V.    CONCLUSION

For the foregoing reasons, Croskrey respectfully requests that the Court enter an Order: (1) appointing Croskrey as Lead Plaintiff; (2) approving Glancy Prongay & Murray LLP as Lead Counsel for the class; and (3) denying the competing motions.

Dated:  May 8, 2025

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**
By:  */s Charles H. Linehan*
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  clinehan@glancylaw.com

*Counsel for Lead Plaintiff Movant Willie Croskrey, and Proposed Lead Counsel for the Class*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Willie Croskrey, certifies that this brief contains 1,791 words, which complies with the word limit of L.R. 11-6.1.

DATED: May 8, 2025       *s/ Charles H. Linehan*
                         Charles H. Linehan

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On May 8, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 8, 2025, at Los Angeles, California.

*s/ Charles H. Linehan*
Charles H. Linehan