# EXHIBIT 4

At the regular meeting of the Accomack County Board of Supervisors, held on the 20th day of November 2024, in the Board Chambers of the County Administration Building, 23296 Courthouse Avenue Accomac, Virginia at 5:00 p.m.

*The Board of Supervisors' minutes are a general account of the November 20, 2024 meeting. For full details of discussions, meeting audio can be located on the County of Accomack's website at https://www.co.accomack.va.us/how-do-i/listen-to-meeting-audio.*

## 1. Opening of Meeting

**MEMBERS PRESENT AND ABSENT**

**Board of Supervisors Present:**
Robert D. Crockett, Chair
H. Jackie Phillips, Vice-Chair
Roger L. DeGeorges
Donald Hart
Vanessa Kay Johnson
C. Reneta Major
Jeffrey A. Parks, Sr
William J. "Billy" Tarr
Calvin L. Washington, Sr.

**Board of Supervisors Absent: none**

**Others Present:**
Mr. Michael T. Mason, County Administrator
Ms. Jan Proctor, County Attorney
Ms. Tina Mears, Executive Assistant

There being a quorum, Chairman Crockett called the meeting to order at 5:00 p.m.

### 1.1 Invocation
Chairman Crockett gave the invocation.

### 1.2 Pledge of Allegiance
The pledge of allegiance was made.

### 1.3 Adoption of Agenda
**A motion to approve the agenda was made by Supervisor Hart and seconded by Vice-Chairman Phillips. *The motion was approved unanimously.***

### 1.4 Consider Allowing Remote Participation of Board Member(s) (if warranted)
Remote participation was not warranted.

## 2. Public Comment

**2.1 Public Comment Rules**

No members of the public signed up to speak.

## 3. Consideration of Minutes

**3.1 Approval of October 16, 2024 Regular BOS Meeting Minutes**

**A motion to approve the October 16, 2024 meeting minutes was made by Vice-Chairman Phillips and seconded by Supervisor Major. *The motion was approved unanimously*.**

## 4. Recognitions

None.

## 5. Consent Agenda

**5.1 Approval of Consent Agenda**

**A motion to approve the consent agenda was made by Vice-Chairman Phillips and seconded by Supervisor Major the Accomack County Board of Supervisors voted to approve the Consent Agenda as presented: *The motion was approved unanimously*.**

**5.2  Consider abandonment of Route 9640 leading to former Bloxom Primary School**
**5.3  Consider scheduling a Public Hearing for Comprehensive Amendments to the Erosion and Stormwater Management Ordinances**
**5.4  Consideration of FY25 Local Government Agreement for the Health Department**
**5.5  Consider Approving FY26 Budget Call Memo and Budget Calendar**
**5.6  Affirm November 7, 2024 Suspension on Open Burning in the County**

## 6. Items Removed from the Consent Agenda

No items were removed from the Consent Agenda

## 7. Report of Public Officials

No reports were submitted

**8. Committee Reports**

    No committee reports.

**9. Old Business**

  **9.1  Receive final report/presentation on MNS Cultural Enrichment Center DHCD Planning Grant – Receive Feasibility Report on Developing the School into a community cultural enrichment center**

Dr. Leslie West, PhD, as the County's consultant on this project, presented a PowerPoint (attached) of the Planning Grant Update to the Board.  This presentation included an overview of the project, conceptual idea drawings, feasibility study recommendations and the project goals of the MNSCEC. A few of the goals include spaces for youth & adult enrichment areas, multipurpose meeting and event spaces. Dr. West spoke of the recommended structural repairs needed and the next steps for the project which will be a Capital Campaign in 2025. In conclusion, she asked the MNS Alumni and the project team in attendance to stand and be recognized.

Supervisor Washington thanked Dr. Leslie West, Mr. Colby West and the rest of the staff for their hard work and stated he cannot wait to see this project complete.

Supervisor Parks asked what the gymnasium is currently used for, Dr. West replied it is used for recreation basketball and for large events.





## MNSCEC Project Overview

- ▶ Meetings held throughout the process
  - ▶ Community
  - ▶ Structural, mechanical, electrical and plumbing engineers
  - ▶ Commonwealth Architects and Project Management Team

- ▶ Final Product
  - ▶ Feasibility Study and Conceptual Design Drawings

Beyond Numbers Consulting, LLC

## MNSCEC Project Goals

- ▶ Provide spaces for youth enrichment programs.
- ▶ Provide event spaces that can be leased back to the community.
- ▶ Provide apartments on the second story.
- ▶ Provide space for a Mary N. Smith museum.
- ▶ Provide adult enrichment areas.
- ▶ Provide multipurpose meeting and event space(s).
- ▶ Renovate the existing gym and associated areas to be used as an event/ gym/theater space with associated support rooms.
- ▶ Develop exterior event and activity areas.

Beyond Numbers Consulting, LLC



Commonwealth
ARCHITECTS

## Feasibility Study – Recommendations

- ▶ Replace the roof.
- ▶ Replace the windows with energy efficient windows.
- ▶ Repoint masonry and assess existing lintels and flashing for repair.
- ▶ Install NFPA 13 compliant sprinkler system.
- ▶ Renovate existing restrooms and provided new toilet facilities on the first floor to accommodate the new program requirements and meet code.

Beyond Numbers Consulting, LLC



## Feasibility Study – Recommendations

- ▶ Verify second floor structure suitable for residential load.
- ▶ Provide energy efficient fixtures and fittings, for example LED lighting and low water fixtures.
- ▶ Update the mechanical systems for the entire building.
- ▶ Explore options for water conservation efforts for the building water and property.
- ▶ Explore options for low overhead continued maintenance.
- ▶ Phased approach for completion.

Beyond Numbers Consulting, LLC





**PROPOSED FIRST FLOOR OPTION 2**
MARY N. SMITH CULTURAL ENRICHMENT CENTER



**PROPOSED SECOND FLOOR**
MARY N. SMITH CULTURAL ENRICHMENT CENTER







**9.2 Consider approving contract vehicles (MOU) allowing volunteer EMS agencies to participate in the County's Pharmacy Drug Box Exchange Program and authorizing the County Administrator to execute these documents with volunteer agencies who desire to be part of the program**

County Director of Public Safety Charles Pruitt gave the Board an update on the MOUs first presented to the Board in October. He stated these contract vehicles were ready for consideration by the Board and cover all of the following agencies that do not have career staff, Saxis, Bloxom and Melfa. He said all the concerns from agencies located in facilities not staffed by the county regarding drug inventory control have been resolved. Staff and concerned agencies have had multiple meetings and concluded that they are able to track the program, complete checks of medications every day by an EMT with the assistance of the Battalion Chief. The MOUs presented for the Board's consideration incorporate changes to this effect. He stated the Fire Commission is recommending approval of the MOUs. Mr. Pruitt recognized Riverside Health Services for their assistance with this program along with the County Administrator and County Attorney.

Chairman Crockett thanked Mr. Pruitt and the DPS staff working through the hiccups as he said would happen.

Supervisor Parks applauded everyone for working together, putting in the time, to put together a document everyone agrees on.

**A motion to approve contract vehicles (MOU and addendum) allowing volunteer EMS agencies to participate in the County's Pharmacy Drug Box Exchange Program and authorizing the County Administrator to execute these documents with volunteer agencies who desire to be part of the program was made by Vice-Chairman Phillips and seconded by Supervisor Major. _The motion was approved unanimously_**

**CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING BY AND BETWEEN THE COUNTY OF ACCOMACK AND THE _____**

_____

Draft 11.14.2024

THIS CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING ("MOU") made this _____ day of _____, 2024, by and between the County of Accomack, Virginia ("County"), a political subdivision of the Commonwealth of Virginia, and _____  _____ (_____), a corporation formed under the laws of the Commonwealth of Virginia, each a "Party," collectively, the "Parties."

WHEREAS, _____ is a non-stock non-profit corporation organized for the purpose of providing firefighting and emergency medical services to the residents of _____ and currently provides firefighting and emergency medical services in the prescribed EMS/Fire District as established by the County pursuant to Section 42-1 of the Accomack County Code; and

WHEREAS, the Board of Supervisors for Accomack County ("Board of Supervisors") adopted Section 42-1(a) of the Accomack County Code to recognize _____ as an integral part of the official public safety program of the County; and

WHEREAS, _____ is licensed by the Virginia Health Commissioner as an emergency medical service agency pursuant to Virginia Code § 32.1-111.6; and

WHEREAS, _____ owns an enclosed station located at _____ _____, Virginia ("Station") that houses one or more emergency medical service vehicles ("EMS Vehicles") equipped to render Advanced Life Safety (ALS) emergency medical services; and

WHEREAS, the EMS Vehicles housed at the Station have been issued a permit by the Virginia Health Commissioner and are used primarily to deliver emergency medical services to patients in the County; and

WHEREAS, _____ typically carries medications in the EMS Vehicle for administration to patients; and

WHEREAS, medications stored in the EMS Vehicles include drugs and substances listed in Schedules II – V in the Virginia Drug Control Act, herein after referred to as "Controlled Drugs," and possibly Schedule VI medications used in Rapid Sequence Intubation, hereinafter referred to as "RSI Medications;" and

WHEREAS, the Parties have been able to obtain Controlled Drugs through a drug box exchange program with Riverside Shore Memorial Hospital ("Hospital"); and

WHEREAS, beginning November 27, 2024, the U.S. Food and Drug Administration will commence enforcement of the U.S. Drug Supply Chain Security Act, which mandates substantial change to the current drug box exchange program; and

WHEREAS, under state regulations promulgated on an emergency basis by the Virginia Board of Pharmacy, an emergency medical services agency ("EMS Agency") that has been issued a controlled substances registration (CSR) by the Virginia Board of Pharmacy under Virginia Code § 54.1-3422 and obtained a registration from the U.S. Drug Enforcement Agency (DEA), also known as a DEA license or a DEA certification, may receive Controlled Drugs and deliver or transfer such Controlled Drugs to a designated location of the registered EMS Agency; and

WHEREAS, the Accomack County Department of Public Safety (DPS or "Department") has been issued a CSR and a registration from the DEA that allows the Department to receive Controlled Drugs and deliver or transfer such Controlled Drugs to designated locations, which include the volunteer fire and rescue stations in Bloxom, Greenbackville, Melfa, Oak Hall, Onancock, Painter, Parksley, Saxis and Tangier; and

WHEREAS, the Virginia Board of Pharmacy has approved the _____ Station as a designated location at which Controlled Drugs may be stored within one or more EMS Vehicles housed at the Station; and

WHEREAS, the County agrees to purchase or obtain, receive, and deliver Controlled Drugs in sealed kit, referred to herein as a "Controlled Drug Box," to _____ for secure storage, transport and administration to patients in need; and

WHEREAS, if the EMS Vehicles carry RSI Medications, the County will also purchase or obtain, receive, and deliver such RSI Medications in a sealed kit, referred to herein as an "RSI Box," for secure storage, transport and administration to patients in need; and

WHEREAS, _____ agrees to receive, store, secure, and administer Controlled Drugs and possibly RSI Medications in compliance with the terms if this MOU.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises made herein, and for other good and valuable consideration, the sufficiency of which is acknowledged by the parties, the County and _____ agree as follows:

1. <u>Compliance with County Controlled Box Program</u>. _____ and the County shall comply with the County's Controlled Box Program in all matters concerning Controlled Drugs and RSI Medications. The County's Controlled Box Program shall be administered and enforced by the County's designated Responsible Party, who shall have the authority to interpret and apply the provisions of the Program.

2. <u>Compliance with Local, State and Federal Law</u>. _____ and the County shall comply with all applicable state, federal and local laws, ordinances, regulations, policies and guidance documents. In the event of conflict between a state or federal law or regulation and the County's Controlled Box Program, the federal or state law or regulation shall control.

3. <u>County Provision of Controlled Drug Boxes</u>. County agrees to obtain and deliver to _____ Controlled Drug Boxes for administration by Advanced Life Support providers to patients in need. Such Controlled Drug Boxes shall be sealed and numbered and shall display the expiration date of the Controlled Drugs secured inside.

2

4. <u>County Provision of RSI Boxes if Applicable</u>. In the event _____ uses RSI Medications, the County will obtain and deliver to _____ sealed RSI Boxes, each of which shall be numbered and shall display expiration dates. Unless otherwise provided herein, RSI Medications and RSI Boxes shall be subject to the same terms and provisions of this MOU that pertain to Controlled Drugs and Controlled Drug Boxes, respectively.

5. <u>Storage and Security of Controlled Drug Boxes</u>. _____ shall be responsible for the safe and secure storage of the Controlled Drug Box after the County's delivery. Controlled Drug Boxes shall be sealed and stored in a locked container within the EMS Vehicle. If the EVMS Vehicle is stored outside of the Station, the EMS Vehicle shall also be locked when not in use. _____ shall comply with all storage and security requirements set out in 18VAC110-20-710.

6. <u>Administering Controlled Drugs</u>. Only volunteer members who have successfully completed ALS training and an ALS exam administered by the Tidewater Emergency Medical Services Regional Council shall open and access a Controlled Drug Box. Additionally, the County's Responsible Party must authorize a volunteer member's access to a Controlled Drug Box.

7. <u>Resealing and Restocking Controlled Drug Boxes</u>. _____ shall be responsible for ensuring that Controlled Drug Boxes are resealed with security ties and restocked in accordance with the procedures set out in the County's Controlled Drug Box Program.

8. <u>Destruction of Partially Used Controlled Drugs</u>. Destruction of partially used Controlled Drugs, shall be accomplished by two persons, one of which must be the ALS provider who administered the Controlled Drugs. The second person may be an EMS provider, trained in BLS (Basic Life Support) or ALS, or another medical professional. All destruction of partially used Controlled Drugs shall occur in a hospital.

9. <u>Inventory</u>. The Controlled Drugs and Controlled Drug Boxes in _____'s possession shall be inventoried on a daily basis by a certified EMS provider. Whenever possible, this duty shall be carried out by the County's DPS employees assigned to the Station. The inventory shall reflect those Controlled Drugs that were administered to patients, those that were destroyed, and those that were otherwise wasted. Inventory results shall be documented using the County's Operative IQ software.

10. <u>Discrepancies in Inventory</u>. Upon the discovery of a discrepancy, such as missing Controlled Drugs or Controlled Drug Boxes, the EMS provider conducting the inventory, or who otherwise discovered the loss, shall immediately report the discrepancy to the Battalion Chief on duty at the Station. The Battalion Chief shall report the discrepancy to the County's Responsible Party within 8 hours of the discovery of the discrepancy. The County's Responsible Party shall notify the Operation Medical Director within 12 hours of the discovery of the discrepancy. The OMD and the County's Responsible Party shall ensure that a thorough investigation is conducted and that any required reports are filed with the DEA. In the event of suspected theft, the County's Responsible Party shall notify the Accomack County Sheriff and the Virginia State Police.

11. <u>Audits</u>. The County's Responsible Party shall ensure that usage audits are conducted on a quarterly basis to account for the current status of all Controlled Drugs that have been delivered to _____. A target audit may also be conducted at any time.

3

12. Reports and Recordkeeping. _____ shall comply with the requirements for filing reports and keeping records set forth in the County's Controlled Drug Box Program and the Virginia Board of Pharmacy regulations. Reports include Pre-hospital Patient Care Reports (PPCR) and Inventory reports. Recordkeeping includes the maintenance of records of any and all Controlled Drugs that are received, administered, wasted, or otherwise disposed of by _____. Records shall be maintained electronically on the County's Operative IQ software for a minimum of two (2) years from the date the record was created.

13. Indemnification. _____ agrees to defend, indemnify and hold harmless the County, its officials, department heads, employees and volunteers, from and against any liability of any type arising out of the negligence of, or intentional wrongdoing by, its officers or volunteers, in the handling, safe keeping, storage, or administration of Controlled Drugs or arising out of any breach of the terms of this MOU.

14. Term. This MOU shall become effective immediately upon full execution by the Parties and shall continue from year to year unless terminated as provided in Section 16 below.

15. Enforcement. The County may enforce this MOU as provided in the County's Controlled Box Program, which provides for a verbal warning upon a first violation; a written notification for a second violation; and removal of authorization to continue receiving Controlled Drugs under the County's CSR and DEA registration.

16. Termination.

(A) This MOU may be terminated for convenience by either party upon written notice delivered to the other party at least sixty (60) days prior to the date of termination.

(B) This MOU may also be terminated against _____ for cause after the County has given verbal notice of a first violation and written notice of a second violation of any term or condition of this MOU, including, without limitation, any failure to comply with the County's Controlled Drug Program or violation of any applicable state, federal or local law, ordinance, regulation, policy or guidance document. Upon a third violation, the County shall provide written notice to _____ that is no longer authorized to continue receiving Controlled Drugs under the County's CSR and DEA registration and that this MOU is terminated effective immediately.

(C) This MOU may be terminated immediately against _____ without prior notice from the County in the event: (i) the Virginia Health Commissioner suspends or revokes _____'s license to provide emergency medical services, (ii) _____ has no member trained in ALS emergency medical services who may be authorized to access Controlled Drug Boxes, (iii) _____ ceases to house an EMS Vehicle at its Station, or (iv) _____ dissolves or otherwise ceases to render emergency medical services.

17. Modification. This MOU may only be modified by written instrument signed by the parties hereto; however, _____ shall be subject to any future changes to the County's Controlled Drug Box

4

Program. The Parties shall also be subject to amendments of applicable state, federal or local laws, ordinances, regulations, policies or guidance documents.

18. Authorized Signatories. The Chairman of the Board of Supervisors is authorized to execute this MOU pursuant to a motion approved by the majority of the members of the Board of Supervisors on _____, 2024. The President of _____ is authorized to execute this MOU by majority vote of its Board of Directors on _____, 2024.

IN WITNESS WHEREOF, the County has caused this instrument to be executed by the Chairman of the County Board of Supervisors and attested by the County Administrator, and the _____ has caused this instrument to be signed in its name by its President by authorization of its membership duly given.

_____

By: _____
    President

COMMONWEALTH OF VIRGINIA, AT LARGE,
COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum of Understanding was acknowledged before me this _____ day of _____, 2024, by _____, President of _____, in the jurisdiction aforesaid.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

COUNTY OF ACCOMACK, VIRGINIA

By: _____
    Robert D. Crockett
    Chairman, Board of Supervisors

ATTEST:

5

_____
Michael T. Mason, County Administrator

COMMONWEALTH OF VIRGINIA, AT LARGE,

COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum was acknowledged before me this _____ day of _____ 2024, by Michael T. Mason, acting in his capacity as County Administrator of Accomack County, Virginia, in the jurisdiction aforesaid.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

APPROVED AS TO FORM:

_____
Jan L. Proctor, Esquire
County Attorney

6

---

**CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING BY AND BETWEEN THE COUNTY OF ACCOMACK AND THE SAXIS VOLUNTEER FIRE COMPANY**

**Draft 11/14/2024**

THIS CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING ("MOU") made this ___ day of _____, 2024, by and between the County of Accomack, Virginia ("County"), a political subdivision of the Commonwealth of Virginia, and the Saxis Volunteer Fire Company (SVFC), a corporation existing under the laws of the Commonwealth of Virginia, each a "Party," collectively, the "Parties."

WHEREAS, SVFC is a non-stock non-profit corporation organized for the purpose of providing firefighting and emergency medical services to the residents of the Town of Saxis and currently provides firefighting and emergency medical services in the prescribed EMS/Fire District as established by the County pursuant to Section 42-1 of the Accomack County Code; and

WHEREAS, the Board of Supervisors for Accomack County ("Board of Supervisors") adopted Section 42-1(a) of the Accomack County Code to recognize SVFC as an integral part of the official public safety program of the County; and

WHEREAS, SVFC is licensed by the Virginia Health Commissioner as an emergency medical service agency pursuant to Virginia Code § 32.1-111.6; and

WHEREAS, SVFC owns an enclosed station located at 8337 School Lane, Saxis, Virginia ("Station") that houses one or more emergency medical service vehicles ("EMS Vehicles") equipped to render Advanced Life Safety (ALS) emergency medical services; and

WHEREAS, the EMS Vehicles housed at the Station have been issued a permit by the Virginia Health Commissioner and are used primarily to deliver emergency medical services to patients in the County; and

WHEREAS, SVFC typically carries medications in the EMS Vehicle for administration to patients; and

WHEREAS, medications stored in the EMS Vehicles include drugs and substances listed in Schedules II – V in the Virginia Drug Control Act, herein after referred to as "Controlled Drugs," and possibly Schedule VI medications used in Rapid Sequence Intubation, hereinafter referred to as "RSI Medications;" and

WHEREAS, the Parties have been able to obtain Controlled Drugs through a drug box exchange program with Riverside Shore Memorial Hospital ("Hospital"); and

WHEREAS, beginning November 27, 2024, the U.S. Food and Drug Administration will commence enforcement of the U.S. Drug Supply Chain Security Act, which mandates substantial change to the current drug box exchange program; and

WHEREAS, under state regulations promulgated on an emergency basis by the Virginia Board of Pharmacy, an emergency medical services agency ("EMS Agency") that has been issued a controlled substances registration (CSR) by the Virginia Board of Pharmacy under Virginia Code § 54.1-3422 and

obtained a registration from the U.S. Drug Enforcement Agency (DEA), also known as a DEA license or a DEA certification, may receive Controlled Drugs and deliver or transfer such Controlled Drugs to a designated location of the registered EMS Agency; and

WHEREAS, the Accomack County Department of Public Safety (DPS or "Department") has been issued a CSR and a registration from the DEA that allows the Department to receive Controlled Drugs and deliver or transfer such Controlled Drugs to designated locations, which include the volunteer fire and rescue stations in Bloxom, Greenbackville, Melfa, Oak Hall, Onancock, Painter, Parksley, Saxis and Tangier; and

WHEREAS, the Virginia Board of Pharmacy has approved the SVFC Station as a designated location at which Controlled Drugs may be stored within one or more EMS Vehicles housed at the Station; and

WHEREAS, the County agrees to purchase or obtain, receive, and deliver Controlled Drugs in sealed kit, referred to herein as a "Controlled Drug Box," to SVFC for secure storage, transport and administration to patients in need; and

WHEREAS, if the EMS Vehicles carry RSI Medications, the County will also purchase or obtain, receive, and deliver such RSI Medications in a sealed kit, referred to herein as an "RSI Box," for secure storage, transport and administration to patients in need; and

WHEREAS, SVFC agrees to receive, store, secure, and administer Controlled Drugs and possibly RSI Medications in compliance with the terms if this MOU.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises made herein, and for other good and valuable consideration, the sufficiency of which is acknowledged by the parties, the County and SVFC agree as follows:

1. Compliance with County Controlled Box Program. SVFC and the County shall comply with the County's Controlled Box Program in all matters concerning Controlled Drugs and RSI Medications. The County's Controlled Box Program shall be administered and enforced by the County's designated Responsible Party, who shall have the authority to interpret and apply the provisions of the Program.

2. Compliance with Local, State and Federal Law. SVFC and the County shall comply with all applicable state, federal and local laws, ordinances, regulations, policies and guidance documents. In the event of conflict between a state or federal law or regulation and the County's Controlled Box Program, the federal or state law or regulation shall control.

3. County Provision of Controlled Drug Boxes. County agrees to obtain and deliver to SVFC Controlled Drug Boxes for administration by Advanced Life Support providers to patients in need. Such Controlled Drug Boxes shall be sealed and numbered and shall display the expiration date of the Controlled Drugs secured inside.

4. County Provision of RSI Boxes if Applicable. In the event SVFC uses RSI Medications, the County will obtain and deliver to SVFC sealed RSI Boxes, each of which shall be numbered and shall display expiration dates. Unless otherwise provided herein, RSI Medications and RSI Boxes

2

---

shall be subject to the same terms and provisions of this MOU that pertain to Controlled Drugs and Controlled Drug Boxes, respectively.

5. Storage and Security of Controlled Drug Boxes. SVFC shall be responsible for the safe and secure storage of the Controlled Drug Box after the County's delivery. Controlled Drug Boxes shall be sealed and stored in a locked container within the EMS Vehicle. If the EVMS Vehicle is stored outside of the Station, the EMS Vehicle shall also be locked when not in use. SVFC shall comply with all storage and security requirements set out in 18VAC110-20-710.

6. Administering Controlled Drugs. Only volunteer members who have successfully completed ALS training and an ALS exam administered by the Tidewater Emergency Medical Services Regional Council shall open and access a Controlled Drug Box. Additionally, the County's Responsible Party must authorize a volunteer member's access to a Controlled Drug Box.

7. Resealing and Restocking Controlled Drug Boxes. SVFC shall be responsible for ensuring that Controlled Drug Boxes are resealed with security ties and restocked in accordance with the procedures set out in the County's Controlled Drug Box Program.

8. Destruction of Partially Used Controlled Drugs. Destruction of partially used Controlled Drugs, shall be accomplished by two persons, one of which must be the ALS provider who administered the Controlled Drugs. The second person may be an EMS provider, trained in BLS (Basic Life Support) or ALS, or another medical professional. All destruction of partially used Controlled Drugs shall occur in a hospital.

9. Inventory. The Controlled Drugs and Controlled Drug Boxes in SVFC's possession shall be inventoried on a daily basis by a certified EMS provider. The inventory shall reflect those Controlled Drugs that were administered to patients, those that were destroyed, and those that were otherwise wasted. Inventory results shall be documented using the County's Operative IQ software. In the event SVFC is not able to check and inventory its assigned Controlled Drug Boxes on any given day, a member of SVFC shall advise the on-duty Battalion Chief of ACDPS of this inability prior to 2 p.m. on such day, and ACDPS shall ensure that the check and inventory is conducted by a certified EMS provider on its staff. Notwithstanding the foregoing, SVFC shall check and inventory assigned Controlled Drug Boxes every Wednesday, Saturday and Sunday without fail.

10. Discrepancies in Inventory. Upon the discovery of a discrepancy, such as missing Controlled Drugs or Controlled Drug Boxes, the EMS provider conducting the inventory, or who otherwise discovered the loss, shall immediately report the discrepancy to the Battalion Chief on duty at the Station. The Battalion Chief shall report the discrepancy to the County's Responsible Party within 8 hours of the discovery of the discrepancy. The County's Responsible Party shall notify the Operation Medical Director within 12 hours of the discovery of the discrepancy. The OMD and the County's Responsible Party shall ensure that a thorough investigation is conducted and that any required reports are filed with the DEA. In the event of suspected theft, the County's Responsible Party shall notify the Accomack County Sheriff and the Virginia State Police.

3

11. <u>Audits</u>. The County's Responsible Party shall ensure that usage audits are conducted on a quarterly basis to account for the current status of all Controlled Drugs that have been delivered to SVFC. A target audit may also be conducted at any time.

12. <u>Reports and Recordkeeping</u>. SVFC shall comply with the requirements for filing reports and keeping records set forth in the County's Controlled Drug Box Program and the Virginia Board of Pharmacy regulations. Reports include Pre-hospital Patient Care Reports (PPCR) and Inventory reports. Recordkeeping includes the maintenance of records of any and all Controlled Drugs that are received, administered, wasted, or otherwise disposed of by SVFC. Records shall be maintained electronically on the County's Operative IQ software for a minimum of two years from the date the record was created.

13. <u>Indemnification</u>. SVFC agrees to defend, indemnify and hold harmless the County, its officials, department heads, employees and volunteers, from and against any liability of any type arising out of the negligence of, or intentional wrongdoing by, its officers or volunteers, in the handling, safe keeping, storage, or administration of Controlled Drugs or arising out of any breach of the terms of this MOU.

14. <u>Term</u>. This MOU shall become effective immediately upon full execution by the Parties and shall continue from year to year unless terminated as provided in Section 16 below.

15. <u>Enforcement</u>. The County may enforce this MOU as provided in the County's Controlled Box Program, which provides for a verbal warning upon a first violation; a written notification for a second violation; and removal of authorization to continue receiving Controlled Drugs under the County's CSR and DEA registration.

16. <u>Termination</u>.

(A) This MOU may be terminated for convenience by either party upon written notice delivered to the other party at least sixty (60) days prior to the date of termination.

(B) This MOU may also be terminated against SVFC for cause after the County has given verbal notice of a first violation and written notice of a second violation of any term or condition of this MOU, including, without limitation, any failure to comply with the County's Controlled Drug Program or violation of any applicable state, federal or local law, ordinance, regulation, policy or guidance document. Upon a third violation, the County shall provide written notice to SVFC that is no longer authorized to continue receiving Controlled Drugs under the County's CSR and DEA registration and that this MOU is terminated effective immediately.

(C) This MOU may be terminated immediately against SVFC without prior notice from the County in the event: (i) the Virginia Health Commissioner suspends or revokes SVFC's license to provide emergency medical services, (ii) SVFC has no member trained in ALS emergency medical services who may be authorized to access Controlled Drug Boxes, (iii) SVFC ceases to house an EMS Vehicle at its Station, or (iv) SVFC dissolves or otherwise ceases to render emergency medical services.

4

17. <u>Modification</u>. This MOU may only be modified by written instrument signed by the parties hereto; however, SVFC shall be subject to any future changes to the County's Controlled Drug Box Program. The Parties shall also be subject to amendments of applicable state, federal or local laws, ordinances, regulations, policies or guidance documents.

18. <u>Authorized Signatories</u>. The Chairman of the Board of Supervisors is authorized to execute this MOU pursuant to a motion approved by the majority of the members of the Board of Supervisors on _____, 2024. The President of SVFC is authorized to execute this MOU by majority vote of its Board of Directors on _____, 2024.

IN WITNESS WHEREOF, the County has caused this instrument to be executed by the Chairman of the County Board of Supervisors and attested by the County Administrator, and the Saxis Volunteer Fire Company has caused this instrument to be signed in its name by its President by authorization of its Board of Directors.

**SAXIS VOLUNTEER FIRE COMPANY**

_____

By:

Its: President

COMMONWEALTH OF VIRGINIA, AT LARGE,

COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum of Understanding was acknowledged before me this _____ day of _____ 2024, by _____, President of the Saxis Volunteer Fire Company.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

5

**COUNTY OF ACCOMACK, VIRGINIA**

_____

By: Robert D. Crockett
Its: Chairman, Board of Supervisors

ATTEST:

_____

Michael T. Mason, County Administrator

COMMONWEALTH OF VIRGINIA, AT LARGE,
COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum was acknowledged before me this _____ day of _____ 2024, by Michael T. Mason, acting in his capacity as County Administrator of Accomack County, Virginia.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

APPROVED AS TO FORM:

_____

County Attorney

6

---

**CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING BY AND BETWEEN THE COUNTY OF ACCOMACK AND THE MELFA VOLUNTEER FIRE AND RESCUE COMPANY, INC.**

**Draft 11/14/2024**

THIS CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING ("MOU") made this ___ day of _____, 2024, by and between the County of Accomack, Virginia ("County"), a political subdivision of the Commonwealth of Virginia, and the Melfa Volunteer Fire and Rescue Company, Inc. (MVFRC), a corporation formed under the laws of the Commonwealth of Virginia, each a "Party," collectively, the "Parties."

WHEREAS, MVFRC is a non-stock non-profit corporation organized for the purpose of providing firefighting and emergency medical services to the residents of the Town of Melfa and currently provides firefighting and emergency medical services in the prescribed EMS/Fire District as established by the County pursuant to Section 42-1 of the Accomack County Code; and

WHEREAS, the Board of Supervisors for Accomack County ("Board of Supervisors") adopted Section 42-1(a) of the Accomack County Code to recognize MVFRC as an integral part of the official public safety program of the County; and

WHEREAS, MVFRC is licensed by the Virginia Health Commissioner as an emergency medical service agency pursuant to Virginia Code § 32.1-111.6; and

WHEREAS, MVFRC owns an enclosed station located at 28328 Hatton Street, Melfa, Virginia ("Station") that houses one or more emergency medical service vehicles ("EMS Vehicles") equipped to render Advanced Life Safety (ALS) emergency medical services; and

WHEREAS, the EMS Vehicles housed at the Station have been issued a permit by the Virginia Health Commissioner and are used primarily to deliver emergency medical services to patients in the County; and

WHEREAS, MVFRC typically carries medications in the EMS Vehicle for administration to patients; and

WHEREAS, medications stored in the EMS Vehicles include drugs and substances listed in Schedules II – V in the Virginia Drug Control Act, herein after referred to as "Controlled Drugs," and possibly Schedule VI medications used in Rapid Sequence Intubation, hereinafter referred to as "RSI Medications;" and

WHEREAS, the Parties have been able to obtain Controlled Drugs through a drug box exchange program with Riverside Shore Memorial Hospital ("Hospital"); and

WHEREAS, beginning November 27, 2024, the U.S. Food and Drug Administration will commence enforcement of the U.S. Drug Supply Chain Security Act, which mandates substantial change to the current drug box exchange program; and

WHEREAS, under state regulations promulgated on an emergency basis by the Virginia Board of Pharmacy, an emergency medical services agency ("EMS Agency") that has been issued a controlled substances registration (CSR) by the Virginia Board of Pharmacy under Virginia Code § 54.1-3422 and

obtained a registration from the U.S. Drug Enforcement Agency (DEA), also known as a DEA license or a DEA certification, may receive Controlled Drugs and deliver or transfer such Controlled Drugs to a designated location of the registered EMS Agency; and

WHEREAS, the Accomack County Department of Public Safety (DPS or "Department") has been issued a CSR and a registration from the DEA that allows the Department to receive Controlled Drugs and deliver or transfer such Controlled Drugs to designated locations, which include the volunteer fire and rescue stations in Bloxom, Greenbackville, Melfa, Oak Hall, Onancock, Painter, Parksley, Saxis and Tangier; and

WHEREAS, the Virginia Board of Pharmacy has approved the MVFRC Station as a designated location at which Controlled Drugs may be stored within one or more EMS Vehicles housed at the Station; and

WHEREAS, the County agrees to purchase or obtain, receive, and deliver Controlled Drugs in sealed kit, referred to herein as a "Controlled Drug Box," to MVFRC for secure storage, transport and administration to patients in need; and

WHEREAS, if the EMS Vehicles carry RSI Medications, the County will also purchase or obtain, receive, and deliver such RSI Medications in a sealed kit, referred to herein as an "RSI Box," for secure storage, transport and administration to patients in need; and

WHEREAS, MVFRC agrees to receive, store, secure, and administer Controlled Drugs and possibly RSI Medications in compliance with the terms if this MOU.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises made herein, and for other good and valuable consideration, the sufficiency of which is acknowledged by the parties, the County and MVFRC agree as follows:

1.  Compliance with County Controlled Box Program. MVFRC and the County shall comply with the County's Controlled Box Program in all matters concerning Controlled Drugs and RSI Medications. The County's Controlled Box Program shall be administered and enforced by the County's designated Responsible Party, who shall have the authority to interpret and apply the provisions of the Program.

2.  Compliance with Local, State and Federal Law. MVFRC and the County shall comply with all applicable state, federal and local laws, ordinances, regulations, policies and guidance documents. In the event of conflict between a state or federal law or regulation and the County's Controlled Box Program, the federal or state law or regulation shall control.

3.  County Provision of Controlled Drug Boxes. County agrees to obtain and deliver to MVFRC Controlled Drug Boxes for administration by Advanced Life Support providers to patients in need. Such Controlled Drug Boxes shall be sealed and numbered and shall display the expiration date of the Controlled Drugs secured inside.

4.  County Provision of RSI Boxes if Applicable. In the event MVFRC uses RSI Medications, the County will obtain and deliver to MVFRC sealed RSI Boxes, each of which shall be numbered and shall display expiration dates. Unless otherwise provided herein, RSI Medications and RSI

2

---

Boxes shall be subject to the same terms and provisions of this MOU that pertain to Controlled Drugs and Controlled Drug Boxes, respectively.

5.  Storage and Security of Controlled Drug Boxes. MVFRC shall be responsible for the safe and secure storage of the Controlled Drug Box after the County's delivery. Controlled Drug Boxes shall be sealed and stored in a locked container within the EMS Vehicle. If the EVMS Vehicle is stored outside of the Station, the EMS Vehicle shall also be locked when not in use. MVFRC shall comply with all storage and security requirements set out in 18VAC110-20-710.

6.  Administering Controlled Drugs. Only volunteer members who have successfully completed ALS training and an ALS exam administered by the Tidewater Emergency Medical Services Regional Council shall open and access a Controlled Drug Box. Additionally, the County's Responsible Party must authorize a volunteer member's access to a Controlled Drug Box.

7.  Resealing and Restocking Controlled Drug Boxes. MVFRC shall be responsible for ensuring that Controlled Drug Boxes are resealed with security ties and restocked in accordance with the procedures set out in the County's Controlled Drug Box Program.

8.  Destruction of Partially Used Controlled Drugs. Destruction of partially used Controlled Drugs, shall be accomplished by two persons, one of which must be the ALS provider who administered the Controlled Drugs. The second person may be an EMS provider, trained in BLS (Basic Life Support) or ALS, or another medical professional. All destruction of partially used Controlled Drugs shall occur in a hospital.

9.  Inventory. The Controlled Drugs and Controlled Drug Boxes in MVFRC's possession shall be inventoried on a daily basis by a certified EMS provider. The inventory shall reflect those Controlled Drugs that were administered to patients, those that were destroyed, and those that were otherwise wasted. Inventory results shall be documented using the County's Operative IQ software. In the event MVFRC is not able to check and inventory its assigned Controlled Drug Boxes on any given day, a member of MVFRC shall advise the on-duty Battalion Chief of ACDPS of this inability prior to 2 p.m. on such day, and ACDPS shall ensure that the check and inventory is conducted by a certified EMS provider on its staff. Notwithstanding the foregoing, MVFRC shall check and inventory assigned Controlled Drug Boxes every Wednesday, Saturday and Sunday without fail.

10. Discrepancies in Inventory. Upon the discovery of a discrepancy, such as missing Controlled Drugs or Controlled Drug Boxes, the EMS provider conducting the inventory, or who otherwise discovered the loss, shall immediately report the discrepancy to the Battalion Chief on duty at the Station. The Battalion Chief shall report the discrepancy to the County's Responsible Party within 8 hours of the discovery of the discrepancy. The County's Responsible Party shall notify the Operation Medical Director within 12 hours of the discovery of the discrepancy. The OMD and the County's Responsible Party shall ensure that a thorough investigation is conducted and that any required reports are filed with the DEA. In the event of suspected theft, the County's Responsible Party shall notify the Accomack County Sheriff and the Virginia State Police.

3

11. <u>Audits</u>. The County's Responsible Party shall ensure that usage audits are conducted on a quarterly basis to account for the current status of all Controlled Drugs that have been delivered to MVFRC. A target audit may also be conducted at any time.

12. <u>Reports and Recordkeeping</u>. MVFRC shall comply with the requirements for filing reports and keeping records set forth in the County's Controlled Drug Box Program and the Virginia Board of Pharmacy regulations. Reports include Pre-hospital Patient Care Reports (PPCR) and Inventory reports. Recordkeeping includes the maintenance of records of any and all Controlled Drugs that are received, administered, wasted, or otherwise disposed of by MVFRC. Records shall be maintained electronically on the County's Operative IQ software for a minimum of two years from the date the record was created.

13. <u>Indemnification</u>. MVFRC agrees to defend, indemnify and hold harmless the County, its officials, department heads, employees and volunteers, from and against any liability of any type arising out of the negligence of, or intentional wrongdoing by, its officers or volunteers, in the handling, safe keeping, storage, or administration of Controlled Drugs or arising out of any breach of the terms of this MOU.

14. <u>Term</u>. This MOU shall become effective immediately upon full execution by the Parties and shall continue from year to year unless terminated as provided in Section 16 below.

15. <u>Enforcement</u>. The County may enforce this MOU as provided in the County's Controlled Box Program, which provides for a verbal warning upon a first violation; a written notification for a second violation; and removal of authorization to continue receiving Controlled Drugs under the County's CSR and DEA registration.

16. <u>Termination.</u>

(A) This MOU may be terminated for convenience by either party upon written notice delivered to the other party at least sixty (60) days prior to the date of termination.

(B) This MOU may also be terminated against MVFRC for cause after the County has given verbal notice of a first violation and written notice of a second violation of any term or condition of this MOU, including, without limitation, any failure to comply with the County's Controlled Drug Program or violation of any applicable state, federal or local law, ordinance, regulation, policy or guidance document. Upon a third violation, the County shall provide written notice to MVFRC that is no longer authorized to continue receiving Controlled Drugs under the County's CSR and DEA registration and that this MOU is terminated effective immediately.

(C) This MOU may be terminated immediately against MVFRC without prior notice from the County in the event: (i) the Virginia Health Commissioner suspends or revokes MVFRC's license to provide emergency medical services, (ii) MVFRC has no member trained in ALS emergency medical services who may be authorized to access Controlled Drug Boxes, (iii) MVFRC ceases to house an EMS Vehicle at its Station, or (iv) MVFRC dissolves or otherwise ceases to render emergency medical services.

4

17. <u>Modification</u>. This MOU may only be modified by written instrument signed by the parties hereto; however, MVFRC shall be subject to any future changes to the County's Controlled Drug Box Program. The Parties shall also be subject to amendments of applicable state, federal or local laws, ordinances, regulations, policies or guidance documents.

18. <u>Authorized Signatories</u>. The Chairman of the Board of Supervisors is authorized to execute this MOU pursuant to a motion approved by the majority of the members of the Board of Supervisors on _____, 2024. The President of MVFRC is authorized to execute this MOU by majority vote of its Board of Directors on _____, 2024.

IN WITNESS WHEREOF, the County has caused this instrument to be executed by the Chairman of the County Board of Supervisors and attested by the County Administrator, and the Melfa Volunteer Fire and Rescue Company, Inc. has caused this instrument to be signed in its name by its President by authorization of its Board of Directors.

**MELFA VOLUNTEER FIRE AND RESCUE COMPANY, INC.**

_____

By:

Its: President

COMMONWEALTH OF VIRGINIA, AT LARGE,

COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum of Understanding was acknowledged before me this _____ day of _____, 2024, by _____, President of the Melfa Volunteer Fire and Rescue Company, Inc.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

5

**COUNTY OF ACCOMACK, VIRGINIA**

_____

By: Robert D. Crockett

Its: Chairman, Board of Supervisors

ATTEST:

_____

Michael T. Mason, County Administrator

COMMONWEALTH OF VIRGINIA, AT LARGE,

COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum was acknowledged before me this _____ day of _____ 2024, by Michael T. Mason, acting in his capacity as County Administrator of Accomack County, Virginia.

My commission expires: _____

Notary registration no. _____

_____

Notary Public

APPROVED AS TO FORM:

_____

County Attorney

6

---

**CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING BY AND BETWEEN THE COUNTY OF ACCOMACK AND THE BLOXOM VOLUNTEER FIRE COMPANY**

**Draft 11/14/2024**

THIS CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING ("MOU") made this ___ day of _____, 2024, by and between the County of Accomack, Virginia ("County"), a political subdivision of the Commonwealth of Virginia, and the Bloxom Volunteer Fire Company (BVFC), a corporation existing under the laws of the Commonwealth of Virginia, each a "Party," collectively, the "Parties."

WHEREAS, BVFC is a non-stock non-profit corporation organized for the purpose of providing firefighting and emergency medical services to the residents of the Town of Bloxom and currently provides firefighting and emergency medical services in the prescribed EMS/Fire District as established by the County pursuant to Section 42-1 of the Accomack County Code; and

WHEREAS, the Board of Supervisors for Accomack County ("Board of Supervisors") adopted Section 42-1(a) of the Accomack County Code to recognize BVFC as an integral part of the official public safety program of the County; and

WHEREAS, BVFC is licensed by the Virginia Health Commissioner as an emergency medical service agency pursuant to Virginia Code § 32.1-111.6; and

WHEREAS, BVFC owns an enclosed station located at 15312 Bayside Drive, Bloxom, Virginia ("Station") that houses one or more emergency medical service vehicles ("EMS Vehicles") equipped to render Advanced Life Safety (ALS) emergency medical services; and

WHEREAS, the EMS Vehicles housed at the Station have been issued a permit by the Virginia Health Commissioner and are used primarily to deliver emergency medical services to patients in the County; and

WHEREAS, BVFC typically carries medications in the EMS Vehicle for administration to patients; and

WHEREAS, medications stored in the EMS Vehicles include drugs and substances listed in Schedules II – V in the Virginia Drug Control Act, herein after referred to as "Controlled Drugs," and possibly Schedule VI medications used in Rapid Sequence Intubation, hereinafter referred to as "RSI Medications;" and

WHEREAS, the Parties have been able to obtain Controlled Drugs through a drug box exchange program with Riverside Shore Memorial Hospital ("Hospital"); and

WHEREAS, beginning November 27, 2024, the U.S. Food and Drug Administration will commence enforcement of the U.S. Drug Supply Chain Security Act, which mandates substantial change to the current drug box exchange program; and

WHEREAS, under state regulations promulgated on an emergency basis by the Virginia Board of Pharmacy, an emergency medical services agency ("EMS Agency") that has been issued a controlled substances registration (CSR) by the Virginia Board of Pharmacy under Virginia Code § 54.1-3422 and

obtained a registration from the U.S. Drug Enforcement Agency (DEA), also known as a DEA license or a DEA certification, may receive Controlled Drugs and deliver or transfer such Controlled Drugs to a designated location of the registered EMS Agency; and

WHEREAS, the Accomack County Department of Public Safety (DPS or "Department") has been issued a CSR and a registration from the DEA that allows the Department to receive Controlled Drugs and deliver or transfer such Controlled Drugs to designated locations, which include the volunteer fire and rescue stations in Bloxom, Greenbackville, Melfa, Oak Hall, Onancock, Painter, Parksley, Saxis and Tangier; and

WHEREAS, the Virginia Board of Pharmacy has approved the BVFC Station as a designated location at which Controlled Drugs may be stored within one or more EMS Vehicles housed at the Station; and

WHEREAS, the County agrees to purchase or obtain, receive, and deliver Controlled Drugs in sealed kit, referred to herein as a "Controlled Drug Box," to BVFC for secure storage, transport and administration to patients in need; and

WHEREAS, if the EMS Vehicles carry RSI Medications, the County will also purchase or obtain, receive, and deliver such RSI Medications in a sealed kit, referred to herein as an "RSI Box," for secure storage, transport and administration to patients in need; and

WHEREAS, BVFC agrees to receive, store, secure, and administer Controlled Drugs and possibly RSI Medications in compliance with the terms if this MOU.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises made herein, and for other good and valuable consideration, the sufficiency of which is acknowledged by the parties, the County and BVFC agree as follows:

1. Compliance with County Controlled Box Program. BVFC and the County shall comply with the County's Controlled Box Program in all matters concerning Controlled Drugs and RSI Medications. The County's Controlled Box Program shall be administered and enforced by the County's designated Responsible Party, who shall have the authority to interpret and apply the provisions of the Program.

2. Compliance with Local, State and Federal Law. BVFC and the County shall comply with all applicable state, federal and local laws, ordinances, regulations, policies and guidance documents. In the event of conflict between a state or federal law or regulation and the County's Controlled Box Program, the federal or state law or regulation shall control.

3. County Provision of Controlled Drug Boxes. County agrees to obtain and deliver to BVFC Controlled Drug Boxes for administration by Advanced Life Support providers to patients in need. Such Controlled Drug Boxes shall be sealed and numbered and shall display the expiration date of the Controlled Drugs secured inside.

4. County Provision of RSI Boxes if Applicable. In the event BVFC uses RSI Medications, the County will obtain and deliver to BVFC sealed RSI Boxes, each of which shall be numbered and shall display expiration dates. Unless otherwise provided herein, RSI Medications and RSI Boxes

2

shall be subject to the same terms and provisions of this MOU that pertain to Controlled Drugs and Controlled Drug Boxes, respectively.

5. Storage and Security of Controlled Drug Boxes. BVFC shall be responsible for the safe and secure storage of the Controlled Drug Box after the County's delivery. Controlled Drug Boxes shall be sealed and stored in a locked container within the EMS Vehicle. If the EMS Vehicle is stored outside of the Station, the EMS Vehicle shall also be locked when not in use. BVFC shall comply with all storage and security requirements set out in 18VAC110-20-710.

6. Administering Controlled Drugs. Only volunteer members who have successfully completed ALS training and an ALS exam administered by the Tidewater Emergency Medical Services Regional Council shall open and access a Controlled Drug Box. Additionally, the County's Responsible Party must authorize a volunteer member's access to a Controlled Drug Box.

7. Resealing and Restocking Controlled Drug Boxes. BVFC shall be responsible for ensuring that Controlled Drug Boxes are resealed with security ties and restocked in accordance with the procedures set out in the County's Controlled Drug Box Program.

8. Destruction of Partially Used Controlled Drugs. Destruction of partially used Controlled Drugs, shall be accomplished by two persons, one of which must be the ALS provider who administered the Controlled Drugs. The second person may be an EMS provider, trained in BLS (Basic Life Support) or ALS, or another medical professional. All destruction of partially used Controlled Drugs shall occur in a hospital.

9. Inventory. The Controlled Drugs and Controlled Drug Boxes in BVFC's possession shall be inventoried on a daily basis by a certified EMS provider. The inventory shall reflect those Controlled Drugs that were administered to patients, those that were destroyed, and those that were otherwise wasted. Inventory results shall be documented using the County's Operative IQ software. In the event BVFC is not able to check and inventory its assigned Controlled Drug Boxes on any given day, a member of the BVFC shall advise the on-duty Battalion Chief of ACDPS of this inability prior to 2 p.m. on such day, and ACDPS shall ensure that the check and inventory is conducted by a certified EMS provider on its staff. Notwithstanding the foregoing, BVFC shall check and inventory assigned Controlled Drug Boxes every Wednesday, Saturday and Sunday without fail

10. Discrepancies in Inventory. Upon the discovery of a discrepancy, such as missing Controlled Drugs or Controlled Drug Boxes, the EMS provider conducting the inventory, or who otherwise discovered the loss, shall immediately report the discrepancy to the Battalion Chief on duty at the Station. The Battalion Chief shall report the discrepancy to the County's Responsible Party within 8 hours of the discovery of the discrepancy. The County's Responsible Party shall notify the Operation Medical Director within 12 hours of the discovery of the discrepancy. The OMD and the County's Responsible Party shall ensure that a thorough investigation is conducted and that any required reports are filed with the DEA. In the event of suspected theft, the County's Responsible Party shall notify the Accomack County Sheriff and the Virginia State Police.

3

11. <u>Audits</u>. The County's Responsible Party shall ensure that usage audits are conducted on a quarterly basis to account for the current status of all Controlled Drugs that have been delivered to BVFC. A target audit may also be conducted at any time.

12. <u>Reports and Recordkeeping</u>. BVFC shall comply with the requirements for filing reports and keeping records set forth in the County's Controlled Drug Box Program and the Virginia Board of Pharmacy regulations. Reports include Pre-hospital Patient Care Reports (PPCR) and Inventory reports. Recordkeeping includes the maintenance of records of any and all Controlled Drugs that are received, administered, wasted, or otherwise disposed of by BVFC. Records shall be maintained electronically on the County's Operative IQ software for a minimum of two years from the date the record was created.

13. <u>Indemnification</u>. BVFC agrees to defend, indemnify and hold harmless the County, its officials, department heads, employees and volunteers, from and against any liability of any type arising out of the negligence of, or intentional wrongdoing by, its officers or volunteers, in the handling, safe keeping, storage, or administration of Controlled Drugs or arising out of any breach of the terms of this MOU.

14. <u>Term</u>. This MOU shall become effective immediately upon full execution by the Parties and shall continue from year to year unless terminated as provided in Section 16 below.

15. <u>Enforcement</u>. The County may enforce this MOU as provided in the County's Controlled Box Program, which provides for a verbal warning upon a first violation; a written notification for a second violation; and removal of authorization to continue receiving Controlled Drugs under the County's CSR and DEA registration.

16. <u>Termination</u>.

(A) This MOU may be terminated for convenience by either party upon written notice delivered to the other party at least sixty (60) days prior to the date of termination.

(B) This MOU may also be terminated against BVFC for cause after the County has given verbal notice of a first violation and written notice of a second violation of any term or condition of this MOU, including, without limitation, any failure to comply with the County's Controlled Drug Program or violation of any applicable state, federal or local law, ordinance, regulation, policy or guidance document. Upon a third violation, the County shall provide written notice to BVFC that is no longer authorized to continue receiving Controlled Drugs under the County's CSR and DEA registration and that this MOU is terminated effective immediately.

(C) This MOU may be terminated immediately against BVFC without prior notice from the County in the event: (i) the Virginia Health Commissioner suspends or revokes BVFC's license to provide emergency medical services, (ii) BVFC has no member trained in ALS emergency medical services who may be authorized to access Controlled Drug Boxes, (iii) BVFC ceases to house an EMS Vehicle at its Station, or (iv) BVFC dissolves or otherwise ceases to render emergency medical services.

4

17. <u>Modification</u>. This MOU may only be modified by written instrument signed by the parties hereto; however, BVFC shall be subject to any future changes to the County's Controlled Drug Box Program. The Parties shall also be subject to amendments of applicable state, federal or local laws, ordinances, regulations, policies or guidance documents.

18. <u>Authorized Signatories</u>. The Chairman of the Board of Supervisors is authorized to execute this MOU pursuant to a motion approved by the majority of the members of the Board of Supervisors on _____, 2024. The President of BVFC is authorized to execute this MOU by majority vote of its Board of Directors on _____, 2024.

IN WITNESS WHEREOF, the County has caused this instrument to be executed by the Chairman of the County Board of Supervisors and attested by the County Administrator, and the Bloxom Volunteer Fire Company has caused this instrument to be signed in its name by its President by authorization of its Board of Directors.

**BLOXOM VOLUNTEER FIRE COMPANY**

_____

By:

Its: President

COMMONWEALTH OF VIRGINIA, AT LARGE,

COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum of Understanding was acknowledged before me this _____ day of _____ 2024, by _____, President of the Bloxom Volunteer Fire Company.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

5

**COUNTY OF ACCOMACK, VIRGINIA**

_____

By: Robert D. Crockett

Its:  Chairman, Board of Supervisors

ATTEST:

_____

Michael T. Mason, County Administrator

COMMONWEALTH OF VIRGINIA, AT LARGE,

COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum was acknowledged before me this _____ day of _____ 2024, by Michael T. Mason, acting in his capacity as County Administrator of Accomack County, Virginia.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

APPROVED AS TO FORM:

_____

County Attorney

6

---

**CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING BY AND BETWEEN THE COUNTY OF ACCOMACK AND THE PAINTER VOLUNTEER FIRE COMPANY**

**Draft 11.14.2024**

THIS CONTROLLED DRUG BOX MEMORANDUM OF UNDERSTANDING ("MOU") made this ____ day of _____, 2024, by and between the County of Accomack, Virginia ("County"), a political subdivision of the Commonwealth of Virginia and Painter Volunteer Fire Company (PAINTER VFC), a corporation formed under the laws of the Commonwealth of Virginia, each a "Party," collectively, the "Parties."

WHEREAS, PAINTER VFC is a non-stock non-profit corporation organized for the purpose of providing firefighting and emergency medical services to the residents of the Town of Painter and currently provides firefighting and emergency medical services in the prescribed EMS/Fire District as established by the County pursuant to Section 42-1 of the Accomack County Code; and

WHEREAS, the Board of Supervisors for Accomack County ("Board of Supervisors") adopted Section 42-1(a) of the Accomack County Code to recognize PAINTER VFC as an integral part of the official public safety program of the County; and

WHEREAS, PAINTER VFC owns an enclosed station located at 17116 Wayside Drive, Painter, Virginia ("Station") that houses one or more emergency medical service vehicles ("EMS Vehicles") equipped to render Advanced Life Safety (ALS) emergency medical services; and

WHEREAS, the EMS Vehicles housed at the Station are owned by the Wachapreague Volunteer Fire Company and are used primarily by the County to deliver emergency medical services to patients in the County; and

WHEREAS, PAINTER VFC typically carries medications in the EMS Vehicle for administration to patients; and

WHEREAS, medications stored in the EMS Vehicles include drugs and substances listed in Schedules II – V in the Virginia Drug Control Act, herein after referred to as "Controlled Drugs," and possibly Schedule VI medications used in Rapid Sequence Intubation, hereinafter referred to as "RSI Medications;" and

WHEREAS, the Parties have been able to obtain Controlled Drugs through a drug box exchange program with Riverside Shore Memorial Hospital ("Hospital"); and

WHEREAS, beginning November 27, 2024, the U.S. Food and Drug Administration will commence enforcement of the U.S. Drug Supply Chain Security Act, which mandates substantial change to the current drug box exchange program; and

WHEREAS, under state regulations promulgated on an emergency basis by the Virginia Board of Pharmacy, an emergency medical services agency ("EMS Agency") that has been issued a controlled substances registration (CSR) by the Virginia Board of Pharmacy under Virginia Code § 54.1-3422 and obtained a registration from the U.S. Drug Enforcement Agency (DEA), also known as a DEA license or a DEA certification, may receive Controlled Drugs and deliver or transfer such Controlled Drugs to a designated location of the registered EMS Agency; and

WHEREAS, the Accomack County Department of Public Safety (DPS or "Department") has been issued a CSR and a registration from the DEA that allows the Department to receive Controlled Drugs and deliver or transfer such Controlled Drugs to designated locations, which include the volunteer fire and rescue stations in Bloxom, Greenbackville, Melfa, Oak Hall, Onancock, Painter, Parksley, Saxis and Tangier; and

WHEREAS, the Virginia Board of Pharmacy has approved the PAINTER VFC Station as a designated location at which Controlled Drugs may be stored within one or more EMS Vehicles housed at the Station; and

WHEREAS, the County agrees to purchase or obtain, receive, and deliver Controlled Drugs in sealed kit, referred to herein as a "Controlled Drug Box," to PAINTER VFC for secure storage, transport and administration to patients in need; and

WHEREAS, if the EMS Vehicle carries RSI Medications, the County will also purchase or obtain, receive, and deliver such RSI Medications in a sealed kit, referred to herein as an "RSI Box," for secure storage, transport and administration to patients in need; and

WHEREAS, PAINTER VFC agrees to receive, store, secure, and administer Controlled Drugs and possibly RSI Medications in compliance with the terms if this MOU.

NOW, THEREFORE, for and in consideration of the mutual covenants and promises made herein, and for other good and valuable consideration, the sufficiency of which is acknowledged by the parties, the County and PAINTER VFC agree as follows:

1. <u>Compliance with County Controlled Box Program</u>. PAINTER VFC and the County shall comply with the County's Controlled Box Program in all matters concerning Controlled Drugs and RSI Medications. The County's Controlled Box Program shall be administered and enforced by the County's designated Responsible Party, who shall have the authority to interpret and apply the provisions of the Program.

2. <u>Compliance with Local, State and Federal Law</u>. PAINTER VFC and the County shall comply with all applicable state, federal and local laws, ordinances, regulations, policies and guidance documents. In the event of conflict between a state or federal law or regulation and the County's Controlled Box Program, the federal or state law or regulation shall control.

3. <u>County Provision of Controlled Drug Boxes</u>. County agrees to obtain and deliver to PAINTER VFC Controlled Drug Boxes for administration by Advanced Life Support providers to patients in need. Such Controlled Drug Boxes shall be sealed and numbered and shall display the expiration date of the Controlled Drugs secured inside.

4. <u>County Provision of RSI Boxes if Applicable</u>. In the event PAINTER VFC uses RSI Medications, the County will obtain and deliver to PAINTER VFC sealed RSI Boxes, each of which shall be numbered and shall display expiration dates. Unless otherwise provided herein, RSI Medications and RSI Boxes shall be subject to the same terms and provisions of this MOU that pertain to Controlled Drugs and Controlled Drug Boxes, respectively.

5. <u>Storage and Security of Controlled Drug Boxes</u>. PAINTER VFC shall be responsible for the safe and secure storage of the Controlled Drug Box after the County's delivery. Controlled Drug

2

Boxes shall be sealed and stored in a locked container within the EMS Vehicle. If the EMS Vehicles is stored outside of the Station, the EMS Vehicle shall also be locked when not in use. PAINTER VFC shall comply with all storage and security requirements set out in 18VAC110-20-710.

6. <u>Administering Controlled Drugs</u>. Only volunteer members who have successfully completed an ALS exam administered by the Tidewater Emergency Medical Services Regional Council shall open and access a Controlled Drug Box. Additionally, the County's Responsible Party must authorize a volunteer member's access to a Controlled Drug Box.

7. <u>Resealing and Restocking Controlled Drug Boxes</u>. PAINTER VFC shall be responsible for ensuring that Controlled Drug Boxes are resealed with security ties and restocked in accordance with the procedures set out in the County's Controlled Drug Box Program.

8. <u>Destruction of Partially Used Controlled Drugs</u>. Destruction of partially used Controlled Drugs, shall be accomplished by two persons, one of which must be the ALS provider who administered the Controlled Drugs. The second person may be an EMS provider, trained in BLS (Basic Life Support) or ALS, or another medical professional. All destruction of partially used Controlled Drugs shall occur in a hospital.

9. <u>Inventory</u>. The Controlled Drugs and Controlled Drug Boxes in PAINTER VFC's possession shall be inventoried on a daily basis by a certified EMS provider. Whenever possible, this duty shall be carried out by the County's DPS employees assigned to the Station. The inventory shall reflect those Controlled Drugs that were administered to patients, those that were destroyed, and those that were otherwise wasted. Inventory results shall be documented using the County's Operative IQ software.

10. <u>Discrepancies in Inventory</u>. Upon the discovery of a discrepancy, such as missing Controlled Drugs or Controlled Drug Boxes, the EMS provider conducting the inventory, or who otherwise discovered the loss, shall immediately report the discrepancy to the Battalion Chief on duty at the Station. The Battalion Chief shall report the discrepancy to the County's Responsible Party within 8 hours of the discovery of the discrepancy. The County's Responsible Party shall notify the Operation Medical Director within 12 hours of the discovery of the discrepancy. The OMD and the County's Responsible Party shall ensure that a thorough investigation is conducted and that any required reports are filed with the DEA. In the event of suspected theft, the County's Responsible Party shall notify the Accomack County Sheriff and the Virginia State Police.

11. <u>Audits</u>. The County's Responsible Party shall ensure that usage audits are conducted on a quarterly basis to account for the current status of all Controlled Drugs that have been delivered to PAINTER VFC. A target audit may also be conducted at any time.

12. <u>Reports and Recordkeeping</u>. PAINTER VFC shall comply with the requirements for filing reports and keeping records set forth in the County's Controlled Drug Box Program and the Virginia Board of Pharmacy regulations. Reports include Pre-hospital Patient Care Reports (PPCR) and Inventory reports. Recordkeeping includes the maintenance of records of any and all Controlled Drugs that are received, administered, wasted, or otherwise disposed of by PAINTER VFC. Records shall be maintained electronically on the County's Operative IQ

3

software for a minimum of two years from the date the record was created.

13. <u>Indemnification</u>.  PAINTER VFC agrees to defend, indemnify and hold harmless the County, its officials, department heads, employees and volunteers, from and against any liability of any type arising out of the negligence of, or intentional wrongdoing by, its officers or volunteers, in the handling, safe keeping, storage, or administration of Controlled Drugs or arising out of any breach of the terms of this MOU.

14. <u>Term</u>. This MOU shall become effective immediately upon full execution by the Parties and shall continue from year to year unless terminated as provided in Section 16 below.

15. <u>Enforcement</u>.  The County may enforce this MOU as provided in the County's Controlled Box Program, which provides for a verbal warning upon a first violation; a written notification for a second violation; and removal of authorization to continue receiving Controlled Drugs under the County's CSR and DEA registration.

16. <u>Termination.</u>

(A) This MOU may be terminated for convenience by either party upon written notice delivered to the other party at least sixty (60) days prior to the date of termination.

(B) This MOU may also be terminated against PAINTER VFC for cause after the County has given verbal notice of a first violation and written notice of a second violation of any term or condition of this MOU, including, without limitation, any failure to comply with the County's Controlled Drug Program or violation of any applicable state, federal or local law, ordinance, regulation, policy or guidance document.  Upon a third violation, the County shall provide written notice to PAINTER VFC that is no longer authorized to continue receiving Controlled Drugs under the County's CSR and DEA registration and that this MOU is terminated effective immediately.

(C) This MOU may be terminated immediately against PAINTER VFC without prior notice from the County in the event: (i) the Virginia Health Commissioner suspends or revokes PAINTER VFC's license to provide emergency medical services, (ii) PAINTER VFC has no member trained in ALS emergency medical services who may be authorized to access Controlled Drug Boxes, (iii) PAINTER VFC ceases to house an EMS Vehicle at its Station, or (iv) PAINTER VFC dissolves or otherwise ceases to render emergency medical services.

17. <u>Modification</u>.  This MOU may only be modified by written instrument signed by the parties hereto; however, PAINTER VFC shall be subject to any future changes to the County's Controlled Drug Box Program. The Parties shall also be subject to amendments of applicable state, federal or local laws, ordinances, regulations, policies or guidance documents.

18. <u>Authorized Signatories</u>.  The Chairman of the Board of Supervisors is authorized to execute this MOU pursuant to a motion approved by the majority of the members of the Board of Supervisors

4

---

on _____, 2024.  The President of PAINTER VFC is authorized to execute this MOU by majority vote of its Board of Directors on _____, 2024.

IN WITNESS WHEREOF, the County has caused this instrument to be executed by the Chairman of the County Board of Supervisors and attested by the County Administrator, and the Company has caused this instrument to be signed in its name by its President by authorization of its Board of Directors duly given.

**PAINTER VOLUNTEER FIRE COMPANY**

_____

By:

Its: President, Board of Directors

COMMONWEALTH OF VIRGINIA, AT LARGE,

COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum of Understanding was acknowledged before me this _____ day of _____ 2024, by _____, President of Painter Volunteer Fire Company.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

**COUNTY OF ACCOMACK, VIRGINIA**

_____

By: Robert D. Crockett

Its:  Chairman, Board of Supervisors

5

ATTEST:

_____
Michael T. Mason, County Administrator

COMMONWEALTH OF VIRGINIA, AT LARGE,
COUNTY OF ACCOMACK, TO-WIT:

The foregoing Memorandum was acknowledged before me this _____ day of _____ 2024, by Michael T. Mason, acting in his capacity as County Administrator of Accomack County, Virginia.

My commission expires: _____

Notary registration no. _____

_____
Notary Public

APPROVED AS TO FORM:

_____
County Attorney

6

## 10. Appointments

### 10.1 Appointments

**On a motion made by Supervisor Johnson and seconded by Supervisor Major, the Accomack County Board of Supervisors voted to appoint Reverend Harold White to the Parks & Recreation Advisory Board to fill the seat of Ms. Betty Fosque who resigned. This term will commence immediately and expire on June 30, 2025. _The motion was approved unanimously_**

Chairman Crockett directed the Board to look at open seats that need to be filled at next month's meeting, notably the Planning Commission and one seat on the Community Services Board.

### 10.2 Attendance Report
Attendance reports were included in the Board's agenda packet.

## 11. Public Hearing (6:00 PM)
Chairman Crockett opened the Public Hearing
### 11.1 Public Hearing Rules
County Attorney Jan Proctor read the Public Hearing Rules
### 11.2 Public Hearing Advertisements were included within the Board's Agenda Packet.
### 11.3 Public Hearing on David M. Jordan Guard Shore Wetlands Mitigation Bank Conditional Use Permit Application CUSE-000665-2024

Mr. Lee Pambid, Deputy County Administrator for Community & Economic Development, provided the Full Staff Report, the Planning Commission's recommendations, and the Conditional Use Permit Application. The Board is being asked to approve a conditional use permit for a wetlands off-site compensatory mitigation site with the following 7 conditions:

1.A fully engineered site plan stamped by a professional engineer licensed in the Commonwealth of Virginia shall be submitted to the County Staff for review and approval prior to any construction or land disturbance activity.

2. The applicant shall provide evidence of approval of a US Army Corps of Engineers permit prior to site plan approval.

3. No additional wetland mitigation banks or expansion of existing banks will be allowed on the subject parcels unless a conditional use permit is granted.

4. The applicants shall provide the County with the Phase I Archeological Survey prior to site plan approval.

5. A Joint Permit Application (JPA) permit shall be obtained from the Accomack County Wetlands Board with review by the Virginia Marine Resources Commission (VMRC) prior to site plan approval.

6. The applicant or manager shall provide the County with a copy of all monitoring and maintenance agreements, including the Long-Term Management Plan (LTMP).

7. A County site inspection shall take place annually to ensure all facilities are being maintained as outlined on the site plan and perpetual care documents.

Mr. David Jordan 18267 Channel Rich Court, Leesburg, VA signed up to speak. He stated his intentions for the application were to restore this area back to what it should be. The property where a house once stood was done so by dredging tidal wetlands to create a higher area. He will fill this area back in.

Supervisor Parks questioned the outcome of the property if approved, who would own the property? Mr. Jordan responded that he would own the property. He stated this environment is currently an excellent environment for ducks and geese and it may be more damaging to restore this property compared to letting nature taking its course.

**A motion to approve CUSE-000665-2024, a conditional use permit for a wetlands off-site compensatory mitigation site, as presented, pursuant to Accomack County Code Section 106-54(11), with the 7 conditions recommended by Staff was made by Vice-Chairman Phillips Supervisor and seconded by Supervisor Major, the Accomack County Board of Supervisors voted (8-1) to approve with Supervisor Parks voting Nay.**



**COUNTY OF ACCOMACK**
**BUILDING, PLANNING & ECONOMIC DEVELOPMENT**

23296 Courthouse Ave – Room 105 | P.O. Box 93 | Accomac, Virginia 23301
(757) 787-5726 | planning@co.accomack.va.us
(757) 787-5721 | building@co.accomack.va.us
www.co.accomack.va.us

Building & Code Enforcement                    Floodplain Management
Planning & Zoning                              Economic Development
Geographic Information & Mapping               Wallops Research Park

## CONDITIONAL USE PERMIT APPLICATION

The applicant's attention should be directed to Sections 106-234 and 106-226 of the Accomack County Code, which sets forth Conditional Use Permit regulations.  Staff may request printed copies of the application and supporting materials. Please include a digital file of the site plan if available.

Please note that in accordance with the Chesapeake Bay Preservation Act, certain additional conditions must be met prior to the issuance of a building permit, particularly for parcels containing a Resource Protection Area (RPA).  See Section 106-379 to assist in determining if the parcel lies within the RPA.

A fee of $780 is due at the time of application.  Application must be submitted 30 days prior to the Planning Commission meeting to allow for adequate review time.

### PROJECT DESCRIPTION:

Project Name: Guard Shore Wetland Restoration          Date of Submission 7/16/2024

Property Address (if any): 23519 Guards Shore Rd

City, State, Zip Code: Bloxom, VA 23308

Property Owner Name and Information (if different from Applicant): _____
Magdeline Colburn (53-A-149A) Brian Roberts (53-A-149A1)

Location, shape and size (in acreage) of the parcel(s): 10.000 Ac., 14.832 Ac.

Description of the Existing Land Use: Vacant

Description of the Proposed Land Use (attach additional sheets as needed): _____
Restore wetlands

Number of Acres to be affected: 3.0          Proposed Conditions Attached: Yes ✔ No ☐

Zoning Classification: AG

Accomack County Code Conditional Use Permit Section Reference: 106-504(8)

Election District: Metcompkin   Tax Map Number(s): 53-A-149A, 53-A-149A1

Comprehensive Plan Designation: Conservation Area

Agricultural and Forestal District Designation: Yes ☐ No ✔

Revised as of April 15, 2021 – Page **1** of **3**

---

### APPLICANT INFORMATION:

Applicant(s) Name(s): David Jordan

Address: 18267 Channel Ridge Court

City, State, Zip Code: Leesburg VA 20176

Phone(s): (571)233-5830

Email Address(s): david@dmjordan.com

Applicant(s) Signature(s): David Jordan          Date: 07/16.2024

This application must be signed by the owner(s) of the subject parcel(s) or must have written evidence of the owners' consent attached, which may be in the form of a binding contract of sale with the owners' signature or a letter signed by the owner(s), containing written authorization to act, with full authority, on the owner(s) behalf in filing this Conditional Use Permit application. Signing this application shall certify the owner(s) is/are granting authority to Accomack County staff to enter onto the property for the purpose of conducting site analyses and confirming compliance with Federal, State and County regulations.

Owner Signature (if applicable): David Jordan

### SITE PLAN REQUIREMENTS:

The Accomack County Zoning Ordinance (Section 106-234) requires that a site development plan accompany all Conditional Use Permit applications. The Ordinance (Section 106-226) further requires that the following information be included on all site development plans submitted to Accomack County. Site plans shall be *no less than one inch equals 50 ft.* unless otherwise approved by the Zoning Administrator.

- Name and Address of Property Owner.
- Tax Parcel Identification Number.
- Name and Address of Developer, if different from owner.
- Name and Address of the Firm or Engineer preparing the site plan.
- Location of parcel by Vicinity Map including north directional arrow facing up on page and graphical scale.
- Original date of application and Revision date(s).
- The zoning classification and current land use of the parcel, and of all adjoining parcels.
- The proposed nature of land use for the parcel.
- Name of adjacent property owners and respective tax parcel numbers.
- Name of owners of any property, and corresponding tax parcel numbers on which any utility or drainage easement may be required in conjunction with the development, if applicable.
- The size and shape of the lot or parcel of land with the location of proposed development.
- Property lines of the parcel with limits of development. (If only a portion of a parcel is proposed for development, line shall also be shown).
- The exact location and uses of buildings or structures currently existing or proposed for the site in relation to the property lines of the parcel, including their height, setbacks from property lines, frontage, elevations, building size (in square footage), side and rear yard distances and the distance between buildings or structures.
- The names, route numbers, and locations of existing and proposed public and private streets, entrances and easements on or adjacent to the site. The centerlines or boundary of adjacent rights-of-way shall also be shown.
- The location, type, and size of site access points such as driveways, curb openings, and crossovers. Distances to neighboring access points, median openings, intersections, and traffic signals shall also be provided. If new median cuts are proposed, their location shall also be shown.

Revised as of April 15, 2021 – Page **2** of **3**

- Off-street parking areas and parking spaces including handicapped spaces, loading spaces, and walkways indicating types of surfacing, size, angles of stalls, width of aisles, and a specific schedule showing the number of spaces provided, if applicable.
- The location of existing and proposed wells and septic systems on the site and/or public water systems that will be utilized, if available.
- Conceptual landscaping plan.
- The location of existing and proposed signs on the property, if applicable.
- The location and type of current and proposed exterior lighting including: the height of poles, type and wattage of fixtures, if applicable.

**SITE PLAN REQUIREMENTS-CHESAPEAKE/ATLANTIC PRESERVATION AREA LAND DISTURBANCES GREATER THAN 2,500 FEET**

- The total square footage of impervious surface resulting from the proposed construction which shall not exceed 60 percent of the total lot area.
- All watercourses, creeks, streams and drainage patterns on or adjoining the property.
- Existing vegetated and wooded areas to be cleared and areas to be preserved.
- The landward boundary of the Resource Protection Area (RPA) if applicable.

**ADDITIONAL CHESAPEAKE/ATLANTIC PRESERVATION AREA REQUIREMENTS (IF APPLICABLE)**

- A water quality impact assessment, if building in an RPA for land disturbances greater than 2,500 square feet.
- A landscape plan, for land disturbance greater than 10,000 square feet.
- Environmental Site Assessment, for land disturbance greater than 10,000 square feet. This plan shall be submitted in conjunction with preliminary site plan or preliminary subdivision plan approval.
- A soil and water quality conservation assessment, on land in which agricultural activities are being conducted.

**ADDITIONAL REQUIREMENTS**

- Provide any additional information requested by the zoning administrator.
- Statement signed by the owner or developer stating that the project will be built according to the plan.
- Requirements for U.S. Route 13, if applicable. Refer to Section 106-226(c)(4) of the Accomack County Code.
- Resource Quality Protection Plan, if applicable. Refer to Section 106-235(e) of the Accomack County Code.

*See Accomack County Municode: http://library.municode.com/index.aspx?clientId=13191*

1. Section 106-226
2. Section 106-234
3. Section 106-379

Revised as of April 15, 2021 – Page **3** of **3**

## 12. New Business

### 12.1 Receive mission update from Rocket Lab including an overview of its activities in Accomack County

Ms. Jennifer Goodrum, Director of State and Local Government Operations for Rocket Lab, presented the Board with an operational update (attached). She spoke of Rocket Lab hoping to expand economic benefits in the region by continuing a good partnership with the local communities. She presented a timeline of the company, projects currently in the works and needs of the future to continue expanding. Currently Rocket Lab is hoping to be the fastest to bring a rocket this size, 25 foot in diameter, to market. The challenges Rocket Lab is facing begin with transportation, a rocket that size cannot be moved by plane, train, nor automobile, it must be marine vessel. She did explain that every other space port in the United States has marine infrastructure and here there is currently no usable location. They are currently working with state & federal partners on ideas to accommodate the size of the future rockets and building infrastructure on Wallops Island taking into consideration cost efficiency and community impact, Ms. Goodrum stated that is the key to Virginia's ability to stay competitive and grow in the space arena.

Supervisor Washington commented that this sounds like a phenomenal program on this little Eastern Shore and he would love a tour.

Chairman Crockett confirmed to Ms. Goodrum that this Board supports Rocket Lab and appreciates the presentation tonight. He has no doubt that they also have the full support of Senator DeSteph and Delegate Bloxom to create access to the Island directly.

































## VIRGINIA FOOTPRINT

- Rocket Lab currently has more than 35 full time employees working from Wallops, VA with hiring expected to ramp up significantly in 2025.

- Significant ongoing construction work on LC-3 and on the AIC Building 1 to support Rocket Lab's Neutron development, both located at Wallops.



LAUNCH COMPLEX 3
WALLOPS ISLANDS, VIRGINIA

WDC BUILDING 1
WALLOPS ISLANDS, VIRGINIA

---

Section 4 | VIRGINIA PRESENCE

## LAUNCH COMPLEX 3

Launch pad construction continues with fluid systems installation including water tower, gas storage farms, electrical and power equipment.

Long lead procurements in fabrication including LOx and LNG tanks, inert gas tanks, propellant transfer systems scheduled to arrive on-site in Q3

Offsite fabrication of major launch pad structures and mechanisms in progress.

Second integration building for Neutron on track for occupancy in Q4 2024, exterior building complete.










**12.2 Consider changes to County's Procurement Policy**

Leslie Lewis, Finance Director, presented a summary of the changes up for consideration of the County's Procurement Policy stating the County's Procurement thresholds have not been updated in decades.  Below is a summary of the revisions:

SUMMARY OF PROPOSED 2024 AMENDMENT TO PROCUREMENT POLICIES AND PROCEDURES

In addition to minor clerical and technical revisions, the proposed 2024 amendments to the County's Procurement Policies and Procedures are as follows:

Article V – adds basic requirements for cooperative procurement, e.g., the products and prices listed in the original contract must match those that the vendor has quoted to the County.

Article IX – in accordance with changes to state law (optional):

Requires competitive sealed bids for the purchase of or lease of goods or for the purchase of nonprofessional services or insurance that are expected to exceed $200,000.

Requires competitive sealed bids for construction contracts for non-transportation projects that are expected to exceed $300,000.

Requires competitive sealed bids for construction contracts for transportation projects that are expected to exceed $25,000.

Requires competitive negotiation for professional services expected to exceed $80,000.

Allows the use of small purchase procurement (without competitive sealed bids or competitive negotiation) for contracts for the purchase or lease of goods or for the purchase of nonprofessional services that are not expected to exceed $200,000.

Allows the use of small purchase procurement (without competitive sealed bids or competitive negotiation) for construction contracts for non-transportation projects that are not expected to exceed $300,000.

Allows the use of small purchase procurement (without competitive sealed bids or competitive

negotiation) for construction contracts for transportation projects that are not expected to exceed $25,000.

Allows the use of small purchase procurement (without competitive sealed bids or competitive negotiation) for the purchase of professional services that are not expected to exceed $80,000.

Article XI – in accordance with state law, provides that bidders are not restricted to a brand name and may offer brands that are equal in quality, workmanship, economy of operation and suitability of purpose.

Article XII – in accordance with state law:

Prohibits a Request for Proposals from asking the offeror to furnish estimates of man-hours or cost for services.

Requires offerors, other than those for architectural or engineering services, to state exceptions to terms or conditions in writing at the beginning of negotiations.  Such stated exceptions cannot be used as a basis for evaluating the offerors selected for consideration.

Authorizes competitive negotiations for architectural or professional engineering services to result in awards to more than one offeror provided the Request for Proposals so states and sets out procedures for distributing projects among the selected contractors.

Article XIII – in accordance with state law (optional), changes the maximum amount for a job order contract from $6 Million to $10 Million.  Also, changes the maximum amount per job from $500,000 to $1 Million.

Article XIV – restates the Small Purchase thresholds in Article IX.

Article XVI – in accordance with state law, sets out preferences for County goods and services and provides for descending preferences if County goods and services are not available.

Article XIX – added to limit the modification of fixed-price contracts to 25% of the amount of the contract or $50,000, whichever is greater, unless approved in advance by the Board of Supervisors. This is in accordance with state law.

Article XX – added to incorporate by reference the County's General Terms and Conditions, including newly developed terms and conditions for information technology goods and services, into all contracts for goods and services, unless waived in part by the Purchasing Agent. Those provisions required by state or federal law cannot be waived

She noted that in Article XIII, every purchase over $50,000 will still come before the Board for approval.

Chairman Crockett thanked Ms. Lewis for her work on this.

**On a motion made by Supervisor Major and seconded by Supervisor Parks, the Accomack County Board of Supervisors voted to approve the amendments to the County Procurement Policy as presented by staff. _The motion was approved unanimously_**

**12.3 Consider authorizing a Personal Property Tax Refund to Norfolk Southern Railroad Company in the amount of $158,712.50**
Mike Mason, County Administrator stated due to the magnitude of this refund, he elected not to include it on the consent agenda which is the customary practice. He indicated that the

refunds encompass the personal property taxes paid on 48 trucks and sport utility vehicles that DMV reported as garaged in Accomack County when they were in fact, not. Norfolk Southern has paid personal property taxes for several years and this year notified the County of the erroneous billing.  These vehicles are actually rolling stock and not subject to personal property taxation by state code.  Research was done by staff, erroneous billing acknowledged and the payback, including interest is up for approval.   The amount does need to be addressed on the budget side, a decrease tax revenue change but we are able to offset with investment income, so net is zero.

Chairman Crockett asked how DMV had Accomack County listed on these vehicles.  Mr. Mason responded, when vehicles are registered, there is a drop down for where the vehicle is garaged and Accomack is alphabetically listed first, so if the box is ignored, it defaults to Accomack.

**On a motion made by Vice-Chairman Phillips and seconded by Supervisor Major, the Accomack County Board of Supervisors voted to Approve a personal property tax refund for personal property taxes assessed by the Commission of Revenue on rolling stock owned by Norfolk Southern and to decrease the County's FY25 personal property tax budget by $158,712 and increase the FY25 investment income budget by the same. _The motion was_ _approved unanimously_**

### 13. County Administrator's Report

**13.1**

Mike Mason, County Administrator reminded the Board of upcoming meetings- the December 18th regular Board of Supervisors meeting will be held on Chincoteague at the CVFD.  And the 2025 Organizational Meeting date is set for January 8, 2025, the first Wednesday in the New Year that is not a holiday.  Mr. Mason also encouraged the Board to complete Annual Security Awareness Training which is currently being completed by all County employees.  A few members have completed it already but some have not.

### 14. Board of Supervisors Comment Period

❖ **Supervisor Hart: Supervisor Hart made a motion to send a letter to Atlantic Area Command of Coast Guard regarding the unsafe conditions of the steel buoys in Wachapreague & Quinby inlets. Supervisor Major seconded the motion, _the motion was_ _approved unanimously_**

❖ **Supervisor Johnson** spoke of a project on October 19th she participated in with the Eastern Shore Housing Ministry, building a ramp on a residential house in Savageville. She stated it was exciting to help someone and the family was very appreciative. Happy Thanksgiving.

❖ **Supervisor Major received communication from the Town of Painter, and made a motion for a resolution to request a speed study be performed by VDOT on State Routes 182, 608 and 619 so the speed limits could be lowered.  Vice-Chairman Phillips seconded the motion, _the motion was approved unanimously._**

❖ **Supervisor Washington:** No comment

❖ **Vice-Chairman Phillips:** No comment

- ❖ **Supervisor Parks:** Thanked the Rocket Lab representative for attending this meeting. He stated the more engagement we have, the more informed we'll be and we'd like to see increased rocket launches. Mr. Parks recognized the familiar faces of Mary N Smith Alumni and thanked them for coming. He recently met with Delegate Bloxom and Major General Ring of the Virginia National Guard regarding the Onancock Armory. He said it appears that the guard is moving forward with reopening the armory. Supervisor Parks made the recommendation that they need high-water vehicles

- ❖ **Supervisor DeGeorges:** Thanked Stewart Hall, Deputy County Administrator- Public Works & Facilities, for the great job he and his staff did at the Greenbackville Harbor.

- ❖ **Supervisor Tarr:** Is looking forward to the December 18th Board of Supervisors meeting being at Chincoteague Volunteer Fire Company

- ❖ **Chairman Crockett**: Wished everyone a Happy Thanksgiving.

## 15. Budget and Appropriation Items

### 15.1 - Consider Approving Resolution to Amend the FY25 Budget.

**A motion was made to approve the resolution to amend the FY25 Budget by Vice-chair Phillips and seconded by Supervisor Major. _The motion was approved unanimously._**



### 15.2  Conditionally approve one additional FTE for the Clerk's Office in FY25 subject to the availability of Clerk Technology Trust Funds and other Clerk supplemental funding pledged to cover the cost of the FTE/Appropriating $40,965 for this purpose.
Mike Mason, County Administrator presented this request to the Board on behalf of the Clerk of Court. The Clerk of the Circuit Court has requested an additional full-time

equivalent (FTE) be approved for her office for the remainder of the current fiscal year and for an additional FY25 appropriation to cover the associated costs. Due to the variable nature of the funding sources that are proposed to pay for this initiative, staff recommends the Board's approval be conditioned on the availability of Technology Trust Funds (TTF) and other dedicated funding. Should TTF and other funds dedicated for this purpose not become available or not be sufficient to cover the cost of the additional FTE, the Clerk will have to take action to reduce the total FTE count authorized for her office accordingly.

**A motion was made to conditionally approve one additional FTE for the Clerk's Office in FY25 subject to the availability of Clerk Technology Trust Funds and other Clerk supplemental funding pledged to cover the cost of the FTE/Appropriating $40,965 for this purpose by Supervisor Tarr and seconded by Vice-Chairman Phillips.** _**The motion was approved unanimously.**_

16. **Payables**
   16.1 **Consider Payables**
   County Administrator Mike Mason certified the October payables as presented.
   **A motion to authorize payment of October payables was made by Vice-Chairman Phillips and seconded by Supervisor Tarr.** _**The motion was approved unanimously**_.

17. **Closed Meeting**
   17.1 **Closed Meeting**
   **Vice-chairman Phillips made a motion to go into closed session pursuant to Virginia Code Sections 2.2-3711.A.7 – for consultation with legal counsel pertaining to actual or probable litigation concerning the Water Street appeal, where such consultation or briefing in open meeting would adversely affect the negotiating or litigation posture of public body. The motion was seconded by Supervisor Tarr, the Accomack County Board of Supervisors voted to enter into a Closed Session.**

   17.2 **Certification of Closed Meeting**
   **After reconvening in open session, Vice Chairman Phillips, seconded by Supervisor Tarr, certified that to the best of each member's knowledge (i) only public business matters lawfully exempt from open meeting requirements under Virginia law, and (ii) only such public business matters as were identified in the motion by which the closed session was convened (consultation with legal counsel pertaining to actual or probable litigation concerning the Water Street appeal), were heard, discussed or considered in the meeting.**

   **The Board then voted unanimously by roll call vote to certify the closed session.**
   **Aye: Washington, Johnson, Parks, DeGeorges, Crockett, Phillips, Tarr, Major, Hart**
   **Abstain: None.**
   **Absent: None.**

18. **Adjournment**
   **A motion to adjourn was made by Supervisor Tarr and seconded by Supervisor Hart; the Accomack County Board of Supervisors voted to adjourn the meeting at 6:20 PM.** _**The motion was approved unanimously.**_

19. **Informational Item**

- Regional Library and Heritage Report to the Board of Supervisors (November)